Malcolm H. McVickar, Petitioner *v.* Commonwealth of Pennsylvania, Department of Transportation, Respondent.

Argued February 3, 1978, before Judges ROGERS, BLATT and DiSALLE, sitting as a panel of three.

*John M. Gallagher, Jr.,* with him *Jack Brian,* and *Richard, Brian, DiSanti & Hamilton,* for petitioner.

*Frank A. Fisher, Jr.,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE DiSALLE, July 18, 1978:

The petition for review filed in this case requests that this Court review a decision of the Department of Transportation (PennDOT) Personnel Hearing Board. The Board sustained a decision to suspend Malcolm H. McVickar (Petitioner) from his position for 5 days.

The Petitioner is a patronage employe working for PennDOT. His position is held under neither a labor agreement nor the Civil Service Act. On January 22, 1976, the Petitioner was informed by the Deputy Secretary for Highway Administration that he was suspended for 5 days for working at another job during hours for which he was being paid by PennDOT.

Upon receiving notice of his suspension, the Petitioner demanded a hearing before PennDOT's Personnel Hearing Board.[1] This request was granted and

---

[1] The record shows that the Personnel Hearing Board was created pursuant to a PennDOT regulation. The Board which heard the case at issue was composed of three PennDOT officials. It appears from the record that the board panel is chosen on a per case basis.

a hearing was conducted on August 4, 1976. The Board took testimony from the parties involved and made findings of fact and conclusions of law sustaining the suspension of the Petitioner. Thereafter, this petition for review was filed.

The Petitioner argues that the Board's decision is in violation of his due process rights and not supported by substantial evidence. We do not reach the merits of Petitioner's contentions because the determination made by the PennDOT Personnel Hearing Board that Petitioner's suspension should be sustained does not constitute an appealable "adjudication" within the definition of the Administrative Agency Law (Act), Act of June 4, 1945, P.L. 1338, *as amended*, 71 P.S. §1710.1 et seq.

In *Manheim Township School District v. Board of Education,* 1 Pa. Commonwealth Ct. 627, 276 A.2d 561 (1971), this Court enunciated the principle that Article V, Section 9 of the Pennsylvania Constitution which provides for the right of appeal "from an administrative agency to a court of record or an appellate court" does not apply to actions of an administrative agency which are not adjudications or judicial in nature. This result must obtain even though the Act provides for appeals from "agencies of the Commonwealth."

An adjudication is defined under Section 2 of the Act, 71 P.S. §1710.2(a) as:

. . . any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities or obligations of any or all parties to the proceeding in which the adjudication is made, but shall not mean any final order, decree, decision, determination or ruling based upon a proceeding before a court, or which involves the seizure or forfeiture of property, or which involves

paroles, pardons or releases from mental institutions.

It is not disputed that Petitioner is a patronage employe. The Pennsylvania Supreme Court in *American Federation of State, County and Municipal Employees v. Shapp*, 443 Pa. 527, 535, 280 A.2d 375, 378 (1971) stated:

> We specifically hold that State employees who obtained their positions (jobs) ... by politics or party patronage, and complain of being fired solely on the grounds of political sponsorship or affiliation, have (1) no Constitutionally ordained right of procedural Due Process, (2) nor any other Constitutionally protected right to their jobs under (a) either the Federal or (b) the State Constitution, (3) nor any right claimed herein under any (a) Federal or (b) State Statute.

The Supreme Court held that the patronage employes involved in that case were employes at will and could be fired without notice or hearing.

Subsequent to the decision in *Shapp*, the United States Supreme Court decided *Elrod v. Burns*, 427 U.S. 347 (1976) and *Bishop v. Wood*, 426 U.S. 341 (1976). In *Elrod*, the Court held that mass patronage dismissals of noncivil—service employes was in violation of their First Amendment Rights where the employes claimed that they were discharged solely because of their partisan political affiliation. This decision had the obvious effect of negating the holding in *Shapp* insofar as it pertained to a claim of infringement of First Amendment rights under the Federal Constitution. However, in *Bishop*, decided the same month as *Elrod*, the Court held that a police officer was an employe at will and that any property interest which he may have had in public employment was to

be determined by state law. The Court, relying upon its decision in *Board of Regents v. Roth,* 408 U.S. 564 (1972), distinguished between property interests and Constitutional rights. The petitioner in *Bishop* had been discharged from the police force without a hearing for failure to follow orders, poor attendance, and conduct unsuited to an officer. Concluding that, under North Carolina law, the petitioner had no property interest entitling him to First and Fourteenth Amendment protection, the Supreme Court said:

> In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or illadvised personnel decisions.

*Bishop, supra,* at 350.

We note here that the Petitioner does not assert any political motive for PennDOT's actions, nor contend that PennDOT interfered with his First Amendment rights. Therefore, it is clear that, under the circumstances, the Petitioner has no personal or property right which he can enforce.

The petition for review will be quashed.

### ORDER

AND Now, this 18th day of July, 1978, the Petition for Review filed by Malcolm H. McVickar at No. 2289 C.D. 1976, is hereby quashed.