513 A.2d 979

**NESHAMINY WATER RESOURCES AUTHORITY, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES and Commonwealth of Pennsylvania, Environmental Quality Board, Appellees.**

Supreme Court of Pennsylvania.

Argued April 16, 1986.

Decided July 29, 1986.

George J. Miller, Philadelphia, for appellant.

Ellis M. Saull, Deputy Atty. Gen., for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

The Neshaminy Water Resources Authority ("NWRA") directly appeals an order of Commonwealth Court *en banc* granting the Department of Environmental Resources's ("DER's") preliminary objections, which raise a question of

justiciability,[1] and dismissing this action. NWRA attacks regulations recently issued by the Environmental Quality Board governing the method of determining acceptable phosphorus levels in water, including those waters under NWRA's jurisdiction. NWRA contends these regulations inadequately protect the waters under its jurisdiction against future pollution. The new regulations rely on a model for estimating overall phosphorus levels will directly control only point discharge of pollutants instead of setting specific numeric limits for phosphorus. NWRA claims the model is inadequate and likely to result in future unacceptable phosphorus levels in its water supply as a result of general run-off from farms, residences and commercial establishments. Commonwealth Court properly determined that NWRA was not entitled to pre-enforcement relief from these regulations under our recent decision in *Arsenal Coal v. Commonwealth, Department of Environmental Resources*, 505 Pa. 198, 477 A.2d 1333 (1984). In *Arsenal Coal*, a regulated business defensively attacked the validity of a regulation DER imposed on it as invalid under a specific statutory provision. Here, appellant takes the offense seeking to compel an agency to subject others to more stringent regulation for appellant's benefit. Unlike *Arsenal Coal*, this statute does not require separate treatment for phosphorus and the regulation causes no direct and immediate harm to appellant. We therefore affirm Commonwealth Court.

NWRA filed its petition for review after the Environmental Quality Board issued regulations pursuant to the Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1–691.1001 (Supp.1985). Those regulations removed a specific numeric level for allowable phosphorus

---

1. Strictly speaking, the issue is whether a court is competent to assess the adequacy of a general regulation concerning environmental standards entrusted by the legislature to the expertise of an agency granted law making power over those standards. *See generally Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

content and implemented a general model for determining whether a particular waterway contained too much phosphorus. NWRA alleges that this change would result in increased pollution of the waters of the Commonwealth generally and its waters specifically. It claimed that the model was not scientifically sound as it assumes that phosphorus in the water comes from point-source discharge into the water as opposed to general runoff. Thus, NWRA alleges that the new regulations would result in decreased water quality in violation of statutory and constitutional requirements to protect the environment.

DER filed preliminary objections to the petition for review. It claimed that the allegations were speculative and did not present a justiciable issue. Commonwealth Court granted this preliminary objection and dismissed the action.

Under *Arsenal Coal, supra,* NWRA properly commenced this action in Commonwealth Court in that court's original jurisdiction. It was therefore entitled to an appeal to this Court as of right and appropriately filed a notice of appeal to this Court. 42 Pa.C.S. §§ 761, 723. In *Arsenal Coal,* we noted that the Environmental Hearing Board did not have jurisdiction to conduct pre-enforcement review of regulations issued by the Department at the request of parties directly and immediately affected by those regulations. Because there was no other administrative tribunal available for that purpose, we held that it was possible in certain limited situations for a party directly affected by the application of the regulations to bring an action within Commonwealth Court's original jurisdiction to determine their validity.

*Arsenal Coal* involved an attack on a general strip mining regulation which directly and immediately affected the anthracite industry. The legislature and the Congress had granted partial exemptions to the anthracite industry from the general regulatory authority over surface mining of coal because of anthracite's unique characteristics. DER had nevertheless issued a single regulation governing all surface mining of coal, without recognizing the special

statutory treatment accorded anthracite. We held that the statutory review process was inadequate in that case because the company would suffer direct and immediate harm by not being able to immediately challenge the regulations. Simply stated, to challenge a regulation after *Arsenal Coal* a party must either establish that its activity is subject to the regulation or that the regulation itself directly causes actual, present harm.

Commonwealth Court, in the instant case, held that NWRA could not maintain an original action in that court, distinguishing *Arsenal Coal:*

> [Appellant], unlike the *Arsenal Coal* Appellants, will not suffer direct and immediate harm which would render the statutory administrative review process inadequate. In the case at bar, the challenged regulations will neither require nor prohibit [Appellant] from taking any action because [Appellant] is not a discharger of phosphorus.
>
> [Appellant's] sole complaint is that if DER implements regulations which allow a greater phosphorus discharge into the Neshaminy and Core Creeks, its goal of making these waters unpolluted and safe for contact recreation will be thwarted. The regulations, however, do not in and of themselves permit a greater phosphorus discharge into the waters; the amended regulations specifically state that existing point sources of phosphorus discharge which are currently subject to phosphorus controls will continue to operate at present levels. 25 Pa. Code § 93.9(b)(2), *as amended,* 15 Pa. B. 558 (1985). The amended regulations also contemplate that DER will evaluate the degree to which phosphorus contributes to the impairment of designated uses on a case-by-case basis and may impose more stringent limitations where necessary. *See* 25 Pa. Code § 95.9(a) and (b)(3) and (b)(4), *as amended,* 15 Pa. B. 558 (1985). With respect to the Neshaminy Creek, DER has specifically recognized that it is necessary to apply more stringent limitations on phosphorous dischargers in order to achieve the designated use. *See* 15 Pa. B. 547 (1985).

Thus, the regulations are not self-effectuating. The status quo will continue until DER, upon application or reapplication for a permit by a new or existing discharger, evaluates the water quality of the stream in question and imposes appropriate phosphorus discharge limitations based upon its evaluation. The eventual impact of the amended regulations upon [Appellant], therefore, is at this point in time uncertain. It is not direct or immediate. In contradistinction to the situation in *Arsenal Coal*, the case at bar presents a situation where requiring [Appellant] to challenge DER's application of the regulations to individual phosphorus dischargers on a case-by-case basis will be a more efficient process than to have this Court speculate as to what steps DER may take to implement the amended regulations with respect to the Neshaminy and Core Creeks. Because [Appellant] will not be subjected to direct and immediate harm, the statutory review process is an adequate and appropriate remedy and this Court must refrain from exercising its equitable jurisdiction. *See Arsenal Coal*, 505 Pa. at 208, 477 A.2d at 1338.

92 Pa. Commonwealth Ct. at 111–112, 498 A.2d at 1002.

Commonwealth Court correctly analyzed this case and properly distinguished it from *Arsenal Coal*. Appellant specifically argues that it does allege immediate harm. In fact, however, it contends only that the pollution will increase under these regulations.[2] It makes no claim that the

---

**2.** The petition for review makes the following claims:

    15. These actions were arbitrary, capricious, abuses of discretion, contrary to law and regulations in that:

    (a) pursuant to the new regulations, water in the Neshaminy basin will contain phosphorous in levels inimical to present and future water uses;

    . . . .

    (c) the regulations will result in degradation of the quality of Neshaminy and Core Creeks and Lakes Galena and Luxemberg;

    (d) the Core and Neshaminy Creeks had been polluted and, since the imposition of the phosphorous limitations the water quality of Neshaminy and Core Creeks and their lakes has improved;

    (e) it will lead to increased eutrophication of the Creeks and Lakes which presently provide out-of-door non-contact recreational opportunities to the residents of Bucks and adjoining counties;

promulgation of the regulations themselves made the quality worse. It simply disagrees with the agency's determination that its model is a practical and efficient means of monitoring the effects of general run-off on phosphorus content. Appellant will have several remedies available to it, administrative and judicial, if it finds that its water quality has actually declined.

Appellant contends, however, the law requires prevention, not cure, and therefore the remedies available to it after pollution occurs are insufficient. Thus, it also claims immediate harm in an inability to protect its waters from phosphorus pollution because of the change in the regulations. It further claims that it will be unable to maintain a private action to prevent nuisances without the Departmental standard as a guide. These arguments are without merit. The prophylactic control and the choice of methods by which prophylaxis is effected are entrusted to the Department. As the Commonwealth points out, it has authority under 25 Pa. Code Chapter 102 to control pollution caused by erosion and general runoff of pollutants. In addition, the Clean Streams Law provides for citizen enforcement suits at all time. 35 P.S. § 691.601 (Supp.1985). Thus, there are other methods beyond the regulations at issue here to control phosphorus.

Alternately, appellant argues that it has no forum at any time to challenge the validity of the regulations. It claims that the Commonwealth Court opinion allows it to challenge only application of the regulations in proceedings brought after they become effective. This is incorrect. As we stated in *Arsenal Coal*, there is adequate opportunity to challenge both the application and validity of regulations in permit proceedings before the Environmental Hearing Board. 505 Pa. at 209, 477 A.2d at 1339.

> (f) it will prevent attainment of the NWRA and Bucks County goal, previously supported by DER, of upgrading the use of the Lakes for contact recreation use.
> Petition for Review, ¶ 15, at 5–6.

Since the legislature has delegated lawmaking power over these standards to DER and has determined the regulations are adequate to generally control phosphorus pollution, there does not appear to be any justiciable case or controversy in the absence of proof of an immediate and direct adverse impact on appellant's waters. If that occurs, appellant can protect its rights in later permit proceedings or by private nuisance suits. Unlike *Arsenal Coal,* this action is premature and not ripe for decision. Therefore, the order of Commonwealth Court is affirmed.

ZAPPALA, J., concurs in the result.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent; I do not agree that "this action is premature and not ripe for decision." I would reverse the granting of the preliminary objections dismissing this action and return the matter to Commonwealth Court for proceedings on the merits.