632 A.2d 1

**CONCERNED CITIZENS OF CHESTNUTHILL TOWNSHIP, Anthony Sabia, Miles Reinhart, William Grant, and Michael Vianello, Petitioners,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 30, 1993.

Decided Aug. 31, 1993.

Reconsideration Denied Nov. 5, 1993.

Michael Vianello, for petitioners.

William J. Gerlach, Asst. Counsel, for respondent and Environmental Quality Bd.

Mary S. Wyatte, Chief Counsel, for Independent Regulatory Review Com'n.

Before PALLADINO and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Before this Court are preliminary objections and a motion to quash filed by the Department of Environmental Resources (DER), the Environmental Quality Board (EQB), and the Independent Regulatory Review Commission (IRRC) (collectively, Agencies), to a Petition for Review in the nature of an appeal filed by the Concerned Citizens of Chestnuthill Township, *et al.,* (Petitioners). Petitioners seek the reversal of a regulation promulgated in the *Pennsylvania Bulletin* of May 15, 1993, 23 Pa.B. 2325 (1993), upgrading the classification of McMichaels Creek (Creek) below the village of McMichaels from "High Quality Waters" (HQ) to "Exceptional Value Waters" (EV). For the reasons that follow we sustain the preliminary objections and dismiss the Petition for Review.

Petitioners invoke this Court's original jurisdiction pursuant to Section 761 of the Judicial Code, 42 Pa.C.S. § 761, and its appellate jurisdiction pursuant to Section 763 of the Judicial Code, 42 Pa.C.S. § 763; Pa.R.A.P. 341(a), 1501(a), and Pa. Const. art. V, § 9, in asking this Court to review its objections to the EQB's order upgrading the classification of the Creek. The Petition includes 48 objections to the reclassification comprising, challenges to the facts and the law supporting the EV designation, claims that the upgrade will have deleterious economic, social and political effects, and allegations of procedural and notification defects in the rulemaking process which resulted in the reclassification.

The rulemaking process began when the Pohoqualine Fish Association (PFA) submitted a petition to the EQB to upgrade the water quality standards of the Creek from HQ to EV.[1] On May 15, 1990, the EQB accepted the PFA's petition for study, and after examining the proposal approved the reclassi-

1. Water quality standards consist of the combination of water uses to be protected and the stream conditions that need to be maintained or attained to prevent or eliminate pollution in order to protect the designated uses. 25 Pa.Code § 93.1.

fication of the Creek as proposed rulemaking at its December 17, 1991 meeting. The Office of General Counsel and the Office of Attorney General approved the proposed rulemaking, and notice was published establishing a 30–day public comment period. 22 Pa.B. 960 (1992).[2]

The EQB approved the upgrade as final rulemaking. The new regulations, including the reclassification of the Creek, were then reviewed and approved by the Office of General Counsel, the relevant state Senate and House Committees, and was deemed approved by the IRRC. Lastly, the Office of Attorney General approved the new regulations and published notice. 23 Pa.B. 2325 (1993).

Petitioners urge this Court to vacate the EQB order upgrading the water quality standard of the Creek from HQ to EV. The Agencies argue that this Court lacks both original and appellate jurisdiction to review Petitioners' claims. In regards to our original jurisdiction, it is well established that this Court must refrain from exercising its original equitable jurisdiction to review an allegedly invalid regulation when there exists an *adequate* statutory remedy and review process. (*Department of Public Welfare v. Eisenberg*, 499 Pa. 530, 454 A.2d 513 (1982); *Arsenal Coal Company v. Pennsylvania Department of Environmental Resources*, 505 Pa. 198, 208, 477 A.2d 1333, 1338 (1984)).

Pursuant to Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a), the Environmental Hearing Board (EHB) has the power to review the validity of a DER regulation in the context of an appeal from a specific DER *action* involving the application and enforcement of the allegedly invalid or illegal regulation. The EHB thus enjoys an ancillary power to rule on the validity of regulations, but only in the context of a decision or action of the DER applying the regulation in controversy. *Arsenal Coal.* Although there clearly exists a statutory remedy providing for review before the EHB when a petitioner challenges the validity of a regula-

2. On April 4, 1992, notice was published extending the public comment period and scheduling a public hearing, which was held on May 11, 1992. 22 Pa.B. 1568 (1992).

tion, the question that still must be determined is whether in the pre-enforcement context, this remedy is an adequate, satisfactory alternative to the equitable action initiated under the original jurisdiction of this court.

The Pennsylvania Supreme Court held in *Arsenal Coal* that this statutory, post-enforcement review is adequate unless the regulation itself causes actual, present harm. *Neshaminy Water Resources Authority v. Department of Environmental Resources*, 511 Pa. 334, 513 A.2d 979 (1986) (explaining *Arsenal Coal*). In other words, unless the regulation itself is self-executing, there is no harm done to the litigant until the DER takes some action to apply and enforce its regulations, in which case the normal post-enforcement review process is deemed an adequate remedy. The regulation itself may be challenged in the context of an appeal to the EHB of a DER action, such as issuing an order, permit, license or other decision applying the contested regulation.

In *Arsenal Coal,* fifty-five coal mine operators and producers challenged a general strip mining regulation which directly and immediately affected the anthracite industry. The Supreme Court held that the regulation had industry-wide impact, resulting in ongoing uncertainty in the day-to-day business operations of an industry. The industry would have had to expend substantial sums to comply with the regulation, and if individual companies chose to refuse to comply and test the regulation by appealing, for example, a denial of a permit to operate, or a DER determination ordering sanctions for non-compliance, then the whole anthracite industry would suffer. The Supreme Court ruled that, "[w]here the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenges in advance of enforcement." *Arsenal Coal,* 505 Pa. at 209, 477 A.2d at 1339.

Here, Petitioners are attempting to invoke this Court's original jurisdiction in advance of enforcement of the DER's regulation upgrading the water quality standard of the Creek. The DER has not, for instance, refused to grant permits to Petitioners who want to discharge effluents into the Creek,

nor has it refused to allow specific land uses proposed by the residents of the affected township. Therefore, under *Arsenal Coal,* Petitioners must show that the new regulation itself directly causes present and immediate harm such that it would render the statutory administrative review process inadequate.

Unlike the regulations in *Arsenal Coal,* the regulation here does not require Petitioners to take any immediate action or risk DER sanctions for non-compliance. Rather, the Petition for Review asserts that the re-classification of the Creek will, in the main, affect land uses, because the EV designation causes a number of uses permitted under HQ to shift to the more restrictive "conditional" category. Petitioners claim that a case-by-case determination of land use questions in an EV watershed cost landowners thousands of dollars in engineering, legal and professional fees.

This is not the type of direct, immediate harm contemplated by *Arsenal Coal* for which there is no adequate remedial review process. The reclassification does not, for instance, make certain existing land uses impermissible, and the eventual impact of the new classification is, therefore, at this point of time, uncertain.[3] Furthermore, despite Petitioners' claim that land development will now be more costly because of the allegedly invalid EV classification, if and when the first landowner is aggrieved by a DER application of the new regulation, the landowner may not only appeal to the EHB challenging the DER action, but also may challenge the validity of the

3. The issues raised in this case are very similar to those raised in *Neshaminy.* The water authority sued the DER claiming that the amended regulations passed by the EQB did not sufficiently protect the quality of the waters under its jurisdiction. The Supreme Court upheld this Court's determination that the water authority could not maintain an original action in this court because the amended regulations were not self-effectuating. The status quo would continue until the DER evaluated the water quality of the stream in question during the permit process. The Supreme Court held that the impact of the amendments was uncertain, and the harm was not direct and immediate. A case-by-case evaluation of the water quality would be more efficient than the court speculating on the impact of the new regulations, and therefore there was an adequate alternative process to review the new regulations.

regulation itself. *Neshaminy.* Thereafter, if it is decided that the regulation reclassifying the Creek is invalid, landowners will not be obliged to undertake the more costly land use evaluation required by a conditional use designation.

Therefore, because litigants may immediately challenge the validity of the regulation itself as a matter ancillary to the harm they claim occurred due to the *application* of the regulation to their interests, this post-enforcement remedy is an adequate and more efficient, because less speculative, statutory alternative to invoking this Court's original jurisdiction. Moreover, because we have concluded that the regulation itself does not cause any direct or immediate harm, there is no justiciable case or controversy, *Neshaminy,* and therefore Petitioners' action is premature and not ripe for decision within the original jurisdiction of this Court. *Id.*

■ Petitioners also attempt to bring their action within this Court's appellate jurisdiction pursuant to Article V, § 9 of the Pennsylvania Constitution and Pa.R.A.P. § 1501(a). Pa. R.A.P. § 1501(a), provides that judicial review of governmental determinations may be had by "appeals from an administrative agency (within the meaning of Section 9 of Article V of the Constitution of Pennsylvania) to an appellate court." We have held in *McVickar v. Department of Transportation,* 36 Pa.Commonwealth Ct. 561, 563, 388 A.2d 775, 776 (1978), that Article V, § 9, which provides for the right of appeal "from an administrative agency to a court of record or to an appellate court does not apply to actions of an administrative agency which are not adjudications or judicial in nature."

■ Neither the EQB order reclassifying the Creek nor the IRRC's "deemed approval" of this order is an adjudication or judicial in nature. The DER's rulemaking, enforcement and adjudicatory functions are performed by separate, independent bodies. The DER has the duty of enforcing the rules and regulations; the EHB has the adjudicatory function and power to review orders, permits, licenses and decisions of the DER, and the EQB has the power and the duty to formulate, adopt and promulgate the rules and regulations of general

application which when made, are the rules and regulations of the DER. *United States Steel Corp. v. Department of Environmental Resources,* 65 Pa.Commonwealth Ct. 103, 442 A.2d 7 (1982). Thus the EQB is a quasi-legislative, quasi-policy-making body, and its order upgrading the water quality standard of the Creek is not an adjudication by an administrative agency from which, under Article V, § 9, there is a right of appeal to this Court.[4] *See Insurance Co. of North America v. Insurance Department,* 15 Pa.Commonwealth Ct. 462, 327 A.2d 411 (1974) (this court dismissed an appeal from a regulation promulgated by the Insurance Department on the basis that the promulgation of a regulation does not amount to an adjudication).

■ Similarly, this Court lacks appellate jurisdiction pursuant to 42 Pa.C.S. § 763, which provides that the Commonwealth Court has exclusive jurisdiction of appeals from *final orders* of government agencies,[5] and under Pa.R.A.P. § 341(a) which provides that an appeal may be taken as of right from any *final order* of an administrative agency or lower court.

4. The "deemed approval" of the IRRC which occurs when the IRRC fails to act within 30 days to approve or disapprove a government regulation is similarly not an adjudication. Section 2 of the Regulatory Review Act of June 25, 1982, P.L. 633, *as amended,* 71 P.S. § 745.2, declares that the legislative intent behind the establishment of the IRRC was to provide for review of a proposed regulation in order to determine if the regulation is statutorily authorized, cost effective and generally in the public interest. It is expressly stated that, "it is not intended to create any right or benefit, substantive or procedural, enforceable at law by the Commonwealth against the Commonwealth, its agencies, officers or any person." The IRRC's function, to review proposed regulations is quasi-legislative or quasi-administrative, but like the EQB it is not an adjudicatory body. Thus, its approval of a regulation is not an adjudication by an administrative agency. *See Department of Environmental Resources v. Jubelirer,* 130 Pa.Commonwealth Ct. 124, 567 A.2d 741 (1989), *vacated, appeal dismissed,* 531 Pa. 472, 614 A.2d 204 (1992) (Raising the question of whether the IRRC, as a legislative agency, usurped the powers of the executive, violating the separate of powers doctrine. On appeal, the Supreme Court vacated our order on the basis that recent amendments to the Regulatory Review Act rendered the controversy moot.).

5. The exceptions to this rule are provided in 42 Pa.C.S. § 763(c) and are not applicable in this case.

A "final order" under Pa.R.A.P. 341(b), is any order that: 1) disposes of all claims or of all parties; or (2) any order that is expressly defined as a final order by statute; or (3) an order in a multi-party, multi-claim action which the court expressly determines is immediately appealable so as to facilitate resolution of the entire case.

Neither the IRRC approval nor the EQB order reclassifying the Creek ended litigation by disposing of all claims and parties, *Roy v. Pennsylvania State University,* 130 Pa.Commonwealth Ct. 468, 469 n. 2, 568 A.2d 751, 751 n. 2 (1990), (*citing, In Re Estate of Montgomery,* 367 Pa.Superior Ct. 31, 532 A.2d 439 (1987)), because the order was not issued by an adjudicatory body which had been presented with justiciable claims by adversarial parties. As discussed above, neither the IRRC nor the EQB is an adjudicatory body, and their orders do not dispose of claims and/or parties. Consequently, for the purposes of appellate jurisdiction, neither the EQB order reclassifying the Creek, nor the IRRC's "deemed approval" constitute appealable final orders.

Because we find that this Court lacks both original and appellate jurisdiction to review this matter, we need not address the other arguments presented.

Accordingly, the preliminary objections are sustained, the motion to quash is granted, and the petition for review in the nature of an appeal is dismissed.

## ORDER

AND NOW, this 31st day of August, 1993, the preliminary objections of the Department of Environmental Resources, the Environmental Quality Board, and the Independent Regulatory Review Commission are sustained, the motion to quash is granted, and the Petition for Review is dismissed.