**DUQUESNE LIGHT COMPANY, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 17, 1998.

Decided Feb. 5, 1999.

Reconsideration Denied March 4, 1999.

John W. Carroll, Harrisburg, for petitioner.

Craig S. Lambeth, Harrisburg, for respondent.

Stephen C. Braverman, Philadelphia, for intervenor, Inter-Power/Ahlcon Partners.

Bart E. Cassidy, Bala Cynwyd, for intervenor, Anthracite Region.

Before FRIEDMAN, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

On March 4, 1998, Duquesne Light Company, Inc. (Duquesne) filed a Petition for Review in the Nature of An Action Seeking Declaratory and Injunctive Relief (Petition for Review) invoking this court's original jurisdiction. Currently before this court are the preliminary objections that Respondent Commonwealth of Pennsylvania, Department of Environmental Protection (Department) and Intervenors Anthracite Region Independent Power Producers Association (ARIPPA) and Inter/Power Ahlcon Partners (IPAP) filed to the Petition for Review.

■ On November 1, 1997, the Environmental Quality Board (EQB)[1] amended chapters 121 and 123 of Title 25 of the Pennsylvania Code to include nitrogen oxide (NOx) allowance requirements. 27 Pa. Bull. 5683–99 (1997). These requirements have their genesis in the 1990 amendments to the federal Clean Air Act[2] (CAA). Based on the recognition that ground level ozone (smog) is a regional problem and not confined to state boundaries, the 1990 amendments to the CAA created the Northeast Ozone Transport Commission (OTC) to assist in developing recommendations for controlling interstate smog; Pennsylvania is a member of the OTC. Id. at 5683. In response to an OTC recommendation, the member states formally adopted a Memorandum of Understanding (MOU), which contemplates a regional "cap and trade" program. Id. Under the program, each OTC state would set a limit on aggregate NOx emissions from a discrete group of sources within the state, allocate emission allowances to each source authorizing emissions up to the regulatory limit and permit trading of allowances to effect cost-efficient compliance with the "cap." Id. at 5683–84. To this end, the EQB promulgated the NOx regulations at issue here to "establish a NOx budget and a NOx allowance trading program for NOx affected sources[[3]]

for the purpose of achieving the health based ozone ambient air quality standard."[4] 25 Pa.Code §123.101.

Duquesne, an electric utility licensed to do business in Pennsylvania, owns and operates or maintains several NOx affected sources in Pennsylvania. Two of Duquesne's facilities, Brunot Island and Phillips Stations, are cold reserve facilities that have continued to maintain their operating permits and other regulatory approvals necessary for reactivation. The NOx regulations allocate a fixed number of allowances to all NOx affected sources in Pennsylvania, with the exception of Duquesne's Brunot Island and Phillips Stations facilities (Cold Reserve Facilities).[5]

In its Petition for Review, Duquesne challenges EQB's allocation of allowances to its currently operating facilities as insufficient[6] and also challenges the regulations' failure to allocate allowances to Duquesne's Cold Reserve Facilities. Specifically, Duquesne's Petition for Review alleges that: (1) the regulations constitute a special law; (2) the regulations' treatment of Duquesne's Cold Reserve Facilities violates the prohibition against special laws; (3) the regulations violate Duquesne's equal protection rights by refusing to allocate mandatory allowances to

---

1. The EQB is an administrative board which has the power and duty to formulate, adopt and promulgate rules and regulations which, when made, become the rules and regulations of the Department. Section 1920–A of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §510–20(b). Once the EQB establishes the regulations, the Department has the duty of administering and enforcing the regulations. *United States Steel Corporation v. Commonwealth, Department of Environmental Resources*, 65 Pa.Cmwlth. 103, 442 A.2d 7 (1982).

2. 42 U.S.C. §§7401 *et seq.*

3. NOx affected sources are "fossil-fired combustion units with rated heat input capacity of 250 MMBtu/hour or more and electric generating facilities of 15 megawatts or greater," 27 Pa. Bull. 5683 (1997), or any other source that voluntarily opts to become a NOx affected source. 25 Pa.Code §123.116.

4. Under the NOx budget, each NOx affected source is allocated allowances. One allowance authorizes the source to emit one ton of NOx during the NOx allowance control period, which

is from May 1 of each year to September 30 of the same year. 28 Pa. Bull. 5618 (1998).

5. The regulations state that the Department "may allocate allowances" to these two facilities. 25 Pa.Code §123.115(c).

The regulations allocate allowances for the 1999–2002 control period. 25 Pa.Code §123.115(a). If no allocation is specified for the control period beyond 2002, the current allocations continue indefinitely. *Id.*

6. Duquesne asserts that, pursuant to the MOU, the member states agreed to propose regulations according to guidelines which stated, *inter alia:*

the first phase reduction would be based on the less stringent of the following:
By May 1, 1999, an emission rate of 0.20 pounds of NOx per million BTU or a reduction of their 1990 baseline by 55% in certain areas designated as the outer zone and 65% in other areas designated as the inner zone.

(Duquesne's Petition for Review, ¶ 10(c).) Duquesne's NOx affected sources are located in the outer zone. However, Duquesne alleges that the regulations are designed to require that its facilities reduce emissions by more than 55%.

Duquesne's Cold Reserve Facilities; and (4) the regulations violate Duquesne's due process rights. Duquesne's Petition for Review seeks: (1) a declaration that the regulations are unconstitutional; (2) permanent injunctive relief prohibiting the enforcement of the regulations; and (3) preliminary and permanent injunctive relief enjoining the Department from participating in the reallocation of any allowances granted to Duquesne. The Department, ARIPPA and IPAP (together, Objectors) filed preliminary objections to the Petition for Review.

■ When reviewing preliminary objections, we must accept as true all well-pleaded facts which are material and relevant. *Grand Central Sanitary Landfill, Inc. v. Commonwealth, Department of Environmental Resources*, 123 Pa.Cmwlth. 498, 554 A.2d 182 (1989). Preliminary objections shall be sustained only when they are clear and free from doubt. *Id.*

Initially, the Objectors challenge Duquesne's Petition for Review on the grounds that this court lacks jurisdiction because: (1) Duquesne has failed to exhaust administrative remedies; (2) Duquesne improperly attempts to invoke pre-enforcement review of a regulation; and (3) the action is not ripe for review.[7] In making these arguments, the Objectors essentially assert that Duquesne's action in this court is premature.

■ The Objectors argue that this court lacks jurisdiction over Duquesne's claims because Duquesne failed to exhaust its administrative remedies before the Environmental

Hearing Board (EHB) prior to invoking this court's jurisdiction. It is well settled that "this [c]ourt must refrain from exercising its original equitable jurisdiction to review an allegedly invalid regulation when there exists an *adequate* statutory remedy and review process." *Concerned Citizens of Chestnuthill Township v. Department of Environmental Resources*, 158 Pa.Cmwlth. 248, 632 A.2d 1, 2–3 (1993), *appeal denied*, 537 Pa. 635, 642 A.2d 488 (1994). Here, the Objectors argue that Duquesne has an adequate statutory remedy before the EHB because, if and when the Department issues an operating permit to a Duquesne facility incorporating the NOx allowance requirements, Duquesne can challenge the regulations in the context of a permit appeal to the EHB.[8]

■ On the other hand, Duquesne argues that because this statutory remedy provides only for post-enforcement review before the EHB,[9] it is inadequate where the regulations at issue here cause Duquesne direct and immediate harm. Duquesne argues that it can pursue a pre-enforcement challenge to the regulations in this court because Duquesne's case falls within the exception set forth in *Arsenal Coal Company v. Commonwealth, Department of Environmental Resources*, 505 Pa. 198, 477 A.2d 1333 (1984). In *Arsenal Coal*, our supreme court held, "[w]here the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforce-

---

7. In addition, IPAP argues that Duquesne lacks standing to bring this action.

8. Section 4(a) of the Environmental Hearing Board Act, Act of July 13, 1988, P.L. 530, 35 P.S. §7514(a), provides that the EHB "has the power and duty to hold hearings and issue adjudications...on orders, permits, licenses or decisions of the [D]epartment."

Duquesne argues that it does not have an adequate administrative remedy because: (1) it previously tried to challenge the regulations before the EHB but the EHB dismissed Duquesne's case for lack of jurisdiction and (2) the Department has failed to issue permits to Duquesne incorporating the regulations, thereby depriving Duquesne of the right to appeal a permit decision to the EHB. We note that these allegations of harm

are not contained in Duquesne's Petition for Review, and we cannot consider alleged harms which are dehors the record.

9. Indeed, the EHB has the ancillary power to rule on the validity of the Department's regulations, but only in the context of an appeal from a specific action of the Department involving the application and enforcement of the allegedly invalid regulation. *Concerned Citizens; see also Empire Sanitary Landfill, Inc. v. Commonwealth, Department of Environmental Resources*, 546 Pa. 315, 684 A.2d 1047 (1996); *Lyman v. City of Philadelphia*, 108 Pa.Cmwlth. 494, 529 A.2d 1194 (1987). The EHB does not have the authority to conduct pre-enforcement review of regulations. *Arsenal Coal Company v. Commonwealth, Department of Environmental Resources*, 505 Pa. 198, 477 A.2d 1333 (1984).

ment."[10]  *Id.* at 209, 477 A.2d at 1339. Cases since *Arsenal Coal* have made it clear that

> statutory, post-enforcement review is adequate unless the regulation itself causes actual, present harm.  In other words, unless the regulation itself is self-executing, there is no harm done to the litigant until the [Department] takes some action to apply and enforce its regulations, in which case the normal post-enforcement review process is deemed an adequate remedy.

*Concerned Citizens,* 632 A.2d at 3 (citation omitted); *see also Neshaminy Water Resources Authority v. Commonwealth, Department of Environmental Resources,* 511 Pa. 334, 513 A.2d 979 (1986); *Rouse & Associates v. Pennsylvania Environmental Quality Board,* 164 Pa.Cmwlth. 326, 642 A.2d 642 (1994).

In an attempt to bring its case within the exception set forth in *Arsenal Coal,* Duquesne alleges that it is directly and immediately harmed by the regulations.  Duquesne contends that the Department has no discretion to alter the number of allowances set forth in the regulations and that the Department must incorporate the regulations' NOx allowances into any operating permit issued to a Duquesne facility.  Therefore, Duquesne argues, it is immediately subject to the regulations, i.e., they are self-executing, and, thus, Duquesne suffers harm even before the Department issues an operating permit incorporating the regulations.

We disagree that the Department has no discretion with respect to the number of NOx allowances allocated to Duquesne's Cold Reserve Facilities.  The regulations do not allocate an initial allowance to these facilities; rather, the regulations state that the "Department *may* allocate allowances" to them. 25 Pa.Code §123.115(c) (emphasis added). Therefore, there is no certainty regarding the amount of allowances that the Department may or may not allocate to these facilities.[11]  Thus, Duquesne's allegations of harm with respect to these facilities are purely speculative and remote.

As to Duquesne's currently operational facilities, we recognize that the Department will incorporate the regulations' NOx allowances into new operating permits or revise existing permits to include the NOx allowances.[12]  28 Pa. Bull. 5617 (1998); *see* 25 Pa.Code §123.112. However, we disagree that this makes the regulations self-executing.

■  Unlike the petitioners in *Arsenal Coal,* who were immediately subject to the regulations upon their promulgation, Duquesne is not immediately subject to the regulations here.  In fact, Duquesne is subject to the regulations only *after* Duquesne applies for an operating permit[13] and the Department issues an operating permit incorporating the NOx allowance requirements.  *See Costanza v. Commonwealth, Department of Environmental Resources,* 134 Pa.Cmwlth. 410, 579 A.2d 447 (1990) (holding

---

10.  *Arsenal Coal* involved an industry wide challenge to regulations.  However, contrary to Objectors' assertions, the number of petitioners is not dispositive; it is merely a factor to be considered.  *Grand Central.*

11.  Further, we note that although Duquesne's Petition for Review states that the Cold Reserve Facilities "have continued to maintain their air operating permits and have all other regulatory approvals necessary for reactivation," (Petition for Review, ¶ 5), the Petition for Review does not allege that Duquesne has applied for operating permits for these facilities since the regulations went into effect.

12.  Indeed, we take judicial notice of 29 Pa. Bull. 231–40 (1999), which was also submitted to us by the Department pursuant to Pa. R.A.P. 2501(b).  Since this case was argued before this court, the Department has issued operating per-

mits to Duquesne's Cheswick, Elrama and Bruce Mansfield facilities incorporating the NOx allowance requirements.  29 Pa. Bull. 231, 231, 232, 240 (1999).  Thus, Duquesne has an adequate administrative remedy because it now can challenge the regulations pertaining to these facilities before the EHB. *See* 35 P.S. §7514(a).

13.  Importantly, we note that Duquesne's Petition for Review fails to allege that Duquesne has even applied to the Department for an operating permit for any of its facilities which were allocated NOx allowances in the regulations.  Although it appears from Duquesne's brief that it has applied for some permits, similar allegations are not contained in the Petition for Review.  To state a cause of action, the petitioner must aver the requisite factual allegations *in the Petition for Review.  See Getsie v. Borough of Braddock,* 126 Pa.Cmwlth. 639, 560 A.2d 875 (1989), *appeal denied,* 525 Pa. 628, 578 A.2d 415 (1990).

that petitioners' business operations were not subject to the regulations upon their promulgation but would be affected only after the Department acts on their applications, and thus, there was no immediate harm as in *Arsenal Coal*); *Grand Central* (holding that petitioners were only subject to the regulations after the Department acted on the applications for new permits, and thus, *Arsenal Coal* was distinguishable).

Indeed, this case is similar to *Costanza*, in which the petitioners filed a petition for review in this court's original jurisdiction seeking declaratory and injunctive relief from the implementation of the Department's regulations involving the issuance of permits for the agricultural utilization of sewage. Even though the Department had issued letters clearly indicating its intention to apply the regulations to new permit applications, and petitioners alleged immediate harm because the Department would reject petitioners' filed applications for failure to comply with the regulations, this court held that, because the Department had not yet acted on the applications, the alleged harm was speculative and not immediate. Likewise, even though the Department clearly expressed its intention to issue new permits, or revise existing permits, to include the NOx allowances in the regulations, 28 Pa. Bull. 5617–18; *see* 25 Pa.Code §123.112, until the Department issues Duquesne an operating permit incorporating any NOx allowance requirements, any alleged harm is speculative and not immediate. Moreover, once the Department issues a Duquesne facility an operating permit incorporating the NOx allowance requirements, Duquesne has an adequate administrative remedy because it can challenge the regulations before the EHB. *See* Section 4(a) of the Environmental Hearing Board Act, Act of July 13, 1988, P.L. 530, 35 P.S. §7514(a).

We must also disagree with Duquesne that its case is similar to *Rouse.* In *Rouse,* Rouse submitted to the township zoning board a preliminary subdivision and land development plan to develop land for residential dwellings. The zoning board approved the application with the condition that Rouse construct a package treatment plant that discharged into Valley Creek. Subsequently, the EQB promulgated regulations which redesignated and upgraded the water quality standard for Valley Creek; Rouse filed a petition for review in this court's original jurisdiction, challenging the redesignation of Valley Creek. We held that this court had jurisdiction to review Rouse's pre-enforcement challenge where, through allegations made in the Petition for Review, Rouse demonstrated that it would suffer actual, present harm prior to the Department's enforcement of regulations. In making this determination, we noted that, in its petition for review, Rouse alleged that it would be required to spend endless amounts of time and money to prepare plans simply to apply for a permit in order to secure a determination from the Department. In addition, Rouse alleged that it could not proceed with its development or sell its development because of the uncertainty of the sewer proposal. In addition, we found that the regulations had an immediate effect on Rouse because the zoning board approved Rouse's land use proposal with the condition that Rouse construct a treatment plant that discharged into Valley Creek. Accordingly, we allowed Rouse's pre-enforcement challenge.

Unlike the situation in *Rouse,* here, Duquesne makes no factual allegation that it immediately must spend substantial amounts of money simply to apply for a permit in order to secure a determination from the Department that would give rise to an appeal to the EHB. In fact, in its Petition for Review, Duquesne does not allege even making efforts to apply for permits for any of its facilities since the regulations went into effect.[14] In addition, whereas Rouse's business operations were affected immediately by the regulations which prevented Rouse from proceeding with its development plans or selling its development, Duquesne makes no factual allegations that the regulations had an imme-

14. It is difficult to accept Duquesne's arguments that it should be allowed to pursue a pre-enforcement challenge because its administrative remedies are inadequate when Duquesne has failed to allege that it has taken the first step, i.e., a permit application, to pursue its administrative remedies.

diate impact on its business operations.[15] Further, with respect to the regulations' effects on Duquesne, Duquesne alleges that it cannot plan effectively for future start-up operations of its cold storage facilities, that it must seek allowances from other sources to insure start-up of its Cold Reserve Facilities, that it is forced to over-control its emissions and that it is prevented from creating and banking bonus allowances; however, all of these allegations are anticipatory, speculative and remote. *See Pennsylvania Dental Hygienists' Association, Inc. v. State Board of Dentistry,* 672 A.2d 414 (Pa.Cmwlth.1996) (holding that petitioners' allegations that regulations caused change in their work schedule, reduction in services and income, possible unemployment and uncertainty in the ongoing day-to-day business operations were anticipatory and remote and did not support petitioners' claim of direct and immediate harm). Absent well-pled factual allegations that establish that Duquesne is immediately and actually harmed by the regulations, the direct and immediate harm required by *Arsenal Coal* is not present. *See Costanza; Grand Central.* Having considered the allegations in Duquesne's Petition for Review, this court simply cannot conclude that Duquesne has suffered the requisite direct and immediate harm to justify a pre-enforcement challenge to the regulations. Therefore, the statutory post-enforcement review before the EHB provides an adequate administrative remedy for Duquesne which Duquesne must exhaust prior to invoking this court's jurisdiction.

 Finally, we address the Objectors' contention that this case is not ripe for review.[16] As we have stated, Duquesne's Petition for Review fails to allege that the Department has taken any action against Duquesne with respect to the regulations. Further, the allegations in Duquesne's Petition for Review fail to establish that the regulations have had an immediate impact on Duquesne. Because Duquesne alleges harms that are speculative and remote, there is no justiciable case or controversy, and the case is not ripe for review. *See Grand Central.*

Accordingly, for the foregoing reasons, we sustain the Objectors' preliminary objections on the grounds of lack of jurisdiction, and we dismiss Duquesne's Petition for Review.[17]

### O R D E R

AND NOW, this 5th day of February, 1999, Respondent's and Intervenors' preliminary objections are hereby sustained on the grounds that this court lacks jurisdiction, and Petitioner's Petition for Review is hereby dismissed.

Judge LEADBETTER did not participate in the decision in this case.

15. In support of its argument that the regulations immediately harm Duquesne, Duquesne sets forth facts in its brief purporting to demonstrate that it immediately must spend substantial sums of money to comply with the regulations. However, Duquesne failed to set forth these facts in its Petition for Review. "[A] pleading [must] define the issues, and every act or performance essential to that act must be set forth in the complaint." *Getsie,* 560 A.2d at 877. Therefore, in determining whether Duquesne has established that it suffers direct and immediate harm, we will consider only the well-pleaded facts set forth in its Petition for Review, and we will not consider or rely upon facts which are dehors the record. *See Sears, Roebuck & Co. v. Workers' Compensation Appeal Board (Lear),* 707 A.2d 618 (Pa.Cmwlth.1998). In addition, although we must accept Duquesne's averments of fact as true, any legal conclusions, unjustified inferences, argumentative allegations and expressions of opinion set forth in its Petition for Review are not deemed admitted. *See Baravordeh v. Borough Council of Prospect Park,* 706 A.2d 362 (Pa.Cmwlth.1998), *appeal denied,* —— Pa. ——, 725 A.2d 183 (1998).

16. "The basic rationale of the ripeness doctrine 'is to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies....'" *Rouse,* 642 A.2d at 645 (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

17. Because of our disposition, we need not address the other preliminary objections raised by the Objectors.