The **PENNSYLVANIA SCHOOL BOARDS ASSOCIATION, INC., the Mars Area School District and the Karns City Area School District, Petitioners**

v.

**Dr. Francis BARNES, Secretary of Education of the Commonwealth of Pennsylvania and the Commonwealth of Pennsylvania, Department of Education, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2005.
Decided Oct. 19, 2005.

Paul N. Lalley, Huntingdon Valley, for petitioners.

Gregory E. Dunlap, Deputy General Counsel, Harrisburg, for respondents.

Linda J. Shorey, Harrisburg, for intervenor, Senator Robert C. Jubelirer.

James F. Tierney, IV, Scranton, for intervenor, Senator Robert J. Mellow.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

The Pennsylvania School Boards Association (Association), the Mars Area School District, the Karns City Area School District, and the Slippery Rock Area School District [1] have filed a petition for review in our original jurisdiction, naming the Department of Education (PDE) and its Secretary as respondents, seeking declaratory relief and a writ of mandamus. [2] The petition arises under the recent legislative enactment known as the Homeowner Tax Relief Act, Act of July 5, 2004, P.L. 654, No 72, 53 P.S. §§ 6925.101–6925.704 (Act 72). The respondent, and intervenors, Senators Robert C. Jubelirer and Robert J. Mellow, have filed preliminary objections to the petition for review that the Court now considers.

No party disputes that Act 72's purported aim is to provide a means to alter the mechanism by which school districts are funded, by shifting the burden from property taxes to income or earned income taxes. As a component of that shift in funding burdens, Act 72 also anticipates that the property tax burden may or will also be eased by income the Commonwealth eventually realizes through gambling revenues under the Horse Race Development and Gaming Act, 4 Pa.C.S. §§ 1101–1904. The Association seeks declaratory relief that would inform them as to how Act 72 will operate with regard to various referendums, budgeting concerns, gambling allocations, and other matters.

Specifically, the Association alleges that school districts have no way of knowing how much money they may receive from the state in gambling revenue. The Association cites five reasons for this alleged uncertainty. First, the Association alleges, the Act establishes certain funds in which minimum reserves must be maintained before the state may distribute any funds to individual school districts. [3] Second, the gambling system is not yet operable, and accordingly, the Association claims there is uncertainty as to how soon funds will be available. Third, there is no way to be certain whether the state's estimates of expected gambling revenue are accurate. Fourth, the Act creates a hierarchy of payment of allocations the state will pay from the gambling revenues; its first priority is the Philadelphia school system, second are "Sterling Act" credits (wage taxes paid in Philadelphia for which employees receive a credit), Act of August 5, 1932, Sp. Sess., P.L. No. 45, 53 P.S. §§ 15971–15973, and finally all other school districts. Fifth, the Association notes that, because some school districts have elected not to opt in under Act 72, uncertainty exists as to what will happen to allocated funds that would have gone to

---

**1.** Slippery Rock Area School District joined as a petitioner after the filing of the Petition for Review.

**2.** The petition also includes a request for equitable relief, specifically an order extending a statutory deadline. However, the Association has withdrawn this claim for relief (see page 7, note 5 of the Association's brief) and we will not address it.

**3.** Section 503(d) of the Act, 53 P.S. § 6925.503(d), provides that the Secretary of the Budget may not inform PDE that it is authorized to provide districts with tax allocation reductions until the Property Tax Relief Fund established in the Department of the Treasury reaches $500,000,000 and the Property Tax Relief Fund has no less than $400,000,000.

other school districts if they had elected to opt-in.

The Association pleads that Act 72, which provides that school districts could have opted into Act 72 by proposing a new earned income tax referendum at the November 2005 election, is unclear. The Association fears what will happen to school districts if the voters reject the referendum—will the rejection result in a school district effectively opting out of Act 72, or must the districts take some additional action to overcome the voters' rejection?

As to the funding of homestead and farmstead exclusions (the means by which property tax relief is accomplished), the Association avers that Act 72 is unclear because it provides for such exclusions only when a district has increased revenues from an earned or personal income tax **and** receives an allocation from gambling proceeds. Thus, the Association asks: what if a school district has opted in, levied an earned income or personal income tax, but does not receive any gambling allocation from the state? In such a scenario, would the district be foreclosed from awarding exclusions based solely on the revenues from the increased taxes because of the use of the conjunctive "and" in Act 72? Further, the Association questions whether Act 72, which bases exclusions (i.e., tax relief) on gambling allocations, presents a constitutional conflict with Article VIII, § 2(b)(vi), a provision that authorizes "local taxing authorities to exclude from taxation an amount based on the assessed value of homestead property."

The Association has questions regarding the limitations Act 72 places upon future tax increases. Act 72 allows districts to increase taxes annually by reference to an "index" PDE must establish. The index number, depending upon a school district's market value/income aid ratio, is based upon either "the average of the percentage increase in the Statewide average weekly wage and the Employment Cost Index" or the value of that average percentage increase multiplied by the sum of 0.75 and the district's market value/income aid ratio for the school year prior to the school year for which the index is calculated. See the definition of "Index" in Section 302 of Act 72, 53 P.S. § 6925.302. While these index provisions set a general top-most limit on increases, Act 72 allows for deviations from such standard increases by virtue of its provisions permitting districts to request "exclusions" from PDE or common pleas courts. The Association states that Act 72 is ambiguous as to restrictions and caps on spending.

The Association asserts that, if the state does not provide gambling allocations, there is a question as to whether school districts will be required to pursue back-end referendums seeking voter approval for tax increases. Also, the Association is concerned that the tax-increase exclusions noted above will permit the reviewing authority (the courts or PDE) the power to adjust budgetary items before approving the exclusion.

The Association also questions Act 72's application to multi-county school districts. The Association avers that in school districts that cover more than one county, including one which uses the tax equalization method set forth in the School Code, the result could be that the district might raise taxes above the set index only in one county. School districts, the Association contends, will be unsure whether they must have back-end referendums in both counties.

Finally, the Association pleads that Act 72 presents a non-pragmatic method for the adoption of a preliminary budget. Act 72 requires school districts to submit a preliminary budget for public inspection 20 days before a board adopts the prelimi-

nary budget, and to adopt the preliminary budget no more than 96 days before the primary election. When the proposed budget includes an increase in the tax rate, a school board must submit the budget to the PDE at least 85 days before the primary election. PDE must inform districts at least 75 days before the election whether the increase is within the applicable index. The Association avers that such a process presents a risk to districts because they do not always have all of the information they need to prepare an accurate budget.

In addition to requesting declaratory relief concerning the above questions, the Association also seeks a writ of mandamus, based upon its belief that PDE has improperly failed to perform a non-discretionary duty. Under Act 72, districts must submit to PDE certifications of "qualified contributions," which are described in Section 331(a) of Act 72, 53 P.S. § 6925.331, and to which the Act refers in Section 503(b), 53 P.S. § 6925.503(b). Under this latter provision, districts must submit to PDE their certifications of their qualified contributions. The provision then instructs PDE to provide the Secretary of the Budget with this information. The Association alleges that PDE has failed to forward to the Secretary 79 school districts' certified qualifying contributions. The Association also seeks declaratory relief with regard to questions it has concerning qualifying contributions.

■ In their preliminary objections the respondents raise the following issues: (1) Whether the Association and school district respondents have standing;[4] (2) Whether granting the requested deadline extension would violate the doctrine of sep-

aration of powers; (3) Whether the petition fails to state a case or controversy; (4) Whether the petitioners failed to exhaust an available administrative remedy; (5) Whether the claims are ripe; and (6) Whether the claims fail to state a claim for which we can grant relief. In addressing preliminary objections the Court must accept as true all well-pleaded, material facts and any reasonable inferences that we may draw. *Duquesne Light Co. v. Com., Department of Environmental Protection,* 724 A.2d 413, 416 (Pa.Cmwlth.1999).

**1. Mandamus Relief—Ordering PDE to Forward District–Certified Qualifying Contributions**

We first address the preliminary objections challenging Count III of the petition, seeking a writ of mandamus to compel PDE to forward to the Secretary of the Budget all of the certifications of "qualified contributions" that school districts submitted to PDE. Section 503 of Act 72, 53 P.S. § 6925.503, provides in pertinent part:

(a) Secretary of the Budget certification.—

(1) No later than April 15, 2005, and April 15 of each year thereafter, the Secretary of the Budget shall certify all of the following:

(i) The total amount of revenue in the [Property Tax Relief Fund] . . .

. . . .

(b) School district certification.—

(1) By December 15, 2004, each school district shall certify to the department the estimated amount of its qualifying contribution. The certification shall be based upon the previous year's earned income and net profits tax reve-

4. We note that, according to the respondents, the three named school districts did not opt into Act 72. Because the Association has dropped its claim in equity, and hence, it is impossible for those districts to elect to opt in now, there is no way that any of the other relief the Association requests could affect those districts.

nues and cash flow experience. A school district which does not impose an earned income and net profits tax prior to the implementation of this chapter shall estimate the amount of its qualifying contribution based upon the most recent financial data forwarded to the department by the Department of Revenue.

. . . .

Following receipt of the school district certifications, the department **shall** provide **the certifications** to the secretary of the Budget no later than January 15.

. . . .

(e) Distribution.—In calculating the revenue available for distribution, the secretary shall, from the total amount certified under subsection (a)(1)(i), deduct all of the following:

(1) An amount sufficient to fund reimbursements to eligible school districts pursuant to section 324. The amount deducted pursuant to this paragraph shall be calculated based on the information provided by school districts pursuant to subsection (b)(2).

(Emphasis added.)

■ We note initially that, according to PDE, of 79 school district certifications that it has not forwarded to the Secretary of the Budget, only six of those districts elected to opt into Act 72. We agree with the respondents that the Association has no standing with regard to the 73 districts that did not opt into Act 72. The qualifying contribution has no effect whatsoever on those districts and is relevant only as to opt-in districts.

The Association argues that PDE has a ministerial duty to forward all district certifications it receives to the Secretary of the Budget. PDE argues that it has no duty to submit a school district's certification unless it comports with PDE's method of certification. The petition indicates that the Association believes that PDE is refusing to forward certifications of districts whose certifications reflect the inclusion of "cash flow experience," a term used in subsection 503(b)(1), but excluded in other references in Act 72.

■ With regard to the certified qualified contributions of the six districts that did opt in, and which PDE has not forwarded to the Secretary of the Budget, we begin by addressing the respondents' argument that the Association lacks standing to assert the claim even as representative of the six opt-in districts. An association may have standing to bring a cause of action even when the conduct that formed the basis for the cause of action did not cause injury to the association itself; however, the association "must allege that at least one of its members is suffering immediate or threatened injury as a result of the challenged action." *Pennsylvania School Boards Association, Inc. v. Com., Association of School Administrators, Teamsters Local 502*, 696 A.2d 859, 868 (Pa.Cmwlth.1997), *appeal dismissed*, 550 Pa. 228, 704 A.2d 631 (1998) (*citing Pennsylvania Gamefowl Breeders Association v. Commonwealth*, 533 A.2d 838, 840 (Pa. Cmwlth.1987), *reaff'd after reconsideration*, 538 A.2d 645 (Pa.Cmwlth.1988)). An association must plead that the alleged conduct is causing at least one of its members to suffer immediate or threatened injury, and the interest of such member must be one that is substantial, direct and immediate. *Id.* An interest is substantial if the entity aggrieved will suffer or suffers a discernable adverse effect from the conduct as compared to the abstract interest of citizens in general in having another comply with the law. *Id.* To establish a direct interest an allegedly aggrieved person must show that a causal connection exists between the harm he alleges to his

interest and the alleged conduct. *Id.* The petitioner must also show that there is a proximate relationship such that the connection between the conduct and the injury is not too remote. *Id.*

■ The facts the Association has pled do not show how PDE's alleged non-compliance threatens its six members or how those members' interests are substantial, direct, or immediate. Section 503, as quoted above, indicates that the Secretary's role in determining the amount of funds available for distribution requires him or her to deduct certain amounts from the "certified amount" (a certification figure unrelated to the qualified contribution of districts) reflecting credits districts receive under Section 324(2), which relates to crediting districts for salary and wage taxes received. The Association has not pleaded any facts showing that the failure of PDE to forward the qualifying contributions to the Secretary interferes with any interest of the school districts at issue. Accordingly, we conclude that the Association lacks standing to seek mandamus.

■ We also cannot conclude that, even if the Association proves its factual averments it would be entitled to relief as a matter of law. To establish a mandamus claim, a party must plead facts showing a clear right to relief. *Shaler Area School District v. Salakas*, 494 Pa. 630, 636, 432

A.2d 165, 168 (1981). As indicated above in our discussion of the standing issue, the pleadings do not establish a clear right to relief, as the Association has not alleged any real harm as a result of PDE's inaction.[5]

Finally, the Pennsylvania General Rules of Administrative Practice and Procedure, 1 Pa.Code § 35.19, provide the Association with the right to seek a declaratory order that would "remove uncertainty." Because the Association has an opportunity to seek a declaration from PDE on the issue of the certifications, the Association has an adequate remedy before the Department.[6] For the reasons stated above, we sustain the preliminary objections to the Association's request for relief in the nature of mandamus.

## 2. Declaratory Relief

■ We note that, in general, the petition does not aver that any member is currently suffering or about to suffer any real harm. Rather, the facts averred indicate that the Association is concerned about how Act 72 will operate in the future. In essence then, because there is no present harm, and no certain real harm in the future, the Association is requesting advice regarding the legal interpretation of the Act. Deciding such issues would not resolve an actual controversy. Such an

**5.** We also recognize PDE's representation that the Association's claim with regard to these six districts could be at odds with the interests of its other opt-in members, as the qualified contribution is used by PDE to determine ultimate distribution to individual districts. According to PDE, the lower the qualified contribution the greater the allocation amount a district is eligible to receive. Hence, for school districts that submitted higher certifications the amount of allocation could be lower than that of the districts that do not comply with PDE's methodology. This aspect of the Association's claim supports the

conclusion that the Association's right to relief is not clear.

**6.** The respondents argue that a hearing on the merits is also available to the Association. However, as PDE has stated that it has not taken definitive action on the certified submission by virtue of a rejection (rather, it has requested the districts to resubmit the certification in PDE's format), that remedy is not yet available. Further, because this is merely the pleading stage, we cannot accept the respondents' argument that a remedy that may be available in the future after PDE takes an action is one we may accept as available now.

opinion would be merely advisory—an action courts should not take. *Borough of Marcus Hook v. Pennsylvania Municipal Retirement Board*, 720 A.2d 803 (Pa. Cmwlth.1998). For these general reasons alone, we conclude that the Association lacks standing. Further, because, as we noted above, there is no present case or controversy—a necessary element of a declaratory judgment action—the petition fails to state a claim for which we may grant relief. *See Chester Upland School District v. Commonwealth*, 90 Pa.Cmwlth. 464, 495 A.2d 981, 983 (1985). However, we will discuss below the specific requests for declaratory relief.[7]

### a. qualifying contribution

The Association, in addition to seeking mandamus relief regarding districts' qualifying contribution certifications discussed above, also seeks a declaration that a district's certification may reflect cash flow experience, and that PDE's Statement pertaining to the December 15, 2004 certifications is legally erroneous and would have an unlawful effect. For the reasons we have already stated in our discussion of the request for a writ of mandamus concerning the Association's standing, we conclude that it lacks standing to obtain declaratory relief as to the qualified contributions, and sustain the preliminary objection.

### b. district requests for above-index tax increase

Act 72 provides that districts seeking a tax increase above a set index developed by PDE must request approval by the courts or PDE of the increase. *See* Section 333 of the Act, 53 P.S. § 6925.333. The Association is concerned that PDE or the courts will review the request and make revisions to a district's overall budget. The Association would like a declaration that PDE and the courts must confine their review and revisions to those budgetary items for which the increase is sought. However, at this time, there is no present controversy concerning the review process. The Association's members, if and when aggrieved, may be able to obtain the relief they request in a proceeding before the courts or PDE, and because the courts or PDE could ultimately agree with an allegedly aggrieved member during the review process it must wait for a true controversy to arise before the question is answered. Accordingly, we sustain the respondents' preliminary objection as to this request for declaratory relief.

### c. multi-county district tax increases

The Association, recognizing that some of its members encompass more than one county, is concerned how Act 72 will operate when a tax increase is attributable solely to the "tax equalization" process, Section 672.1 of the Public School Code of 1949[8] (School Code), 24 P.S. § 6-672.1(a)(1). Because that provision of the School Code could result in a higher, above-index rate—for reasons unrelated to proposed increases in school expenditures—the Association asks the Court to declare that such increases should not be considered in determining whether the tax rate exceeds the applicable index. However, when, and if, such an actual issue arises, PDE or the courts will be able to

---

7. The petition requests thirteen specific declarations as to the legal interpretation of Act 72; however, the Association has withdrawn four of those (see the Association's Brief at p. 7, note 5) and therefore we will not address them.

8. Act of March 10, 1949, P.L. 30, *as amended,* added by Section 1 of the Act of August 7, 1961, P.L. 968.

provide an initial forum to consider the dispute. In essence, this request asks for advice, it does not state a present controversy, and no district is currently harmed or threatened with harm associated with equalization rates in multi-county school districts. For these reasons, we sustain the respondents' preliminary objection.

### d. un-allocated state gambling funds

The Association also asks the Court to declare that allocations that would have gone to districts that elected not to opt into Act 72 be distributed to districts that did opt in. As noted by respondents, the state has not yet reached the point at which it will be able to make distributions (the fiscal year beginning July 1, 2007 is approximately the earliest point at which the state will be able to make such distributions). Assuming that districts receive the amount to which they are entitled under the provisions of the Act, they will have sustained no harm, and clearly they have no clear right to any relief at this point in time, because the Association has averred no facts suggesting any imminent need to resolve such a claim between its school district members and PDE. Accordingly, we sustain the preliminary objection to this claim for failure to state a cause of action for which we may grant relief.

### e. legality of PDE's statutory interpretation of Act 72; question of conflict with Art. VIII, Section 2 of the Pennsylvania Constitution

The Association asks the Court to declare whether PDE's interpretations of Act 72 are correct and whether such interpretation comports with Art. VIII, § 2 of the Pa. Constitution, relating to homestead and farmstead exclusions. We conclude that the Association lacks standing to assert this claim. As previously stated, a party must be aggrieved by another's actions in order to have standing. *Pennsyl-*

*vania School Boards Association, Inc.* The Association has not averred facts supporting a claim that its members are presently, or imminently, in danger of being aggrieved by the operation of the homestead and farmstead exclusion provisions of Act 72.

### f. districts' ability to opt in or out if voters at November 2005 election reject the tax referendum

The Association seeks a declaration as to whether districts in which voters reject the earned income tax referendum at the November 2005 election have the option of opting in by adopting the EIT, or not opting in by not adopting the EIT. As the respondents note, if the voters agree to the referendum, this issue will be moot. Also, as the respondents point out, if the voters reject the tax referendum at the November 2005 election, the districts that have elected to opt in by proposing the referendum would have the time and opportunity to pursue their own course of action. The respondents include examples of possible scenarios. The affected districts could follow PDE's interpretation of Section 331(d.1) of Act 72 and seek to impose the earned income and net profits tax in the fiscal year in which they receive an allocation from the state. If a district elected not to enact such a tax, then PDE or the district might initiate an action between those two parties seeking to force the district to take action. PDE apparently agrees with the Association's opinion that, if voters accept the referendum proposal, the earned income tax thereby imposed would not take effect until the first day of the fiscal year in which the district receives a state allocation from the gambling revenue funds.

In any event the above discussion points out the fact that, at this time there is no controversy this Court needs to resolve.

**107**

Accordingly, because there is no actual controversy, we may not entertain the Association's request for relief. We sustain the preliminary objection for failure to state a cause of action for which we may grant relief.

### g. increases in final budget over preliminary budget up to amount of index maximum

The Association asks for a declaration that districts, in adopting a final budget, may increase proposed tax rates up to the designated index rate, even if the preliminary budget did not propose a rate increase up to the maximum. At this time no school district has had to undergo the budget process under Act 72. There simply is no present controversy or threatened harm before the Court. We are obligated to recognize that there is presently only the potential for such a scenario to arise. Because, as discussed above, we may grant declaratory relief only when antagonistic claims are present and litigation is inevitable, we conclude that the Association has failed to state a claim for which we may grant relief.

### h. timing of collection of front-end approved taxes to occur after districts receive annual allocations

The Association asks the Court to declare that districts may not collect taxes approved in a front-end referendum until the state begins to distribute gambling allocations to districts. However, at this time the Association and its members have no immediate interest in the manner in which the taxes are collected. Accordingly, we conclude that the Association lacks standing to pursue this request for relief.

Based on the foregoing discussion, we sustain the respondents' preliminary objections and dismiss the petition for review.

Judge COHN JUBELIRER and Judge LEAVITT did not participate in this decision.

### ORDER

AND NOW, this 19th day of October 2005, the preliminary objections filed by the respondents are sustained. The petition for review is dismissed.