642 A.2d 642

**ROUSE & ASSOCIATES—SHIP ROAD LAND LIMITED PARTNERSHIP, Petitioner,**

**v.**

**PENNSYLVANIA ENVIRONMENTAL QUALITY BOARD and the Pennsylvania Department of Environmental Resources, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 12, 1994.

Decided May 26, 1994.

Thomas A. Riley, Jr., for petitioner.

William J. Gerlach, for respondents.

Before COLINS and FRIEDMAN, JJ., and RODGERS, Senior Judge.

COLINS, Judge.

Rouse and Associates (Rouse) has filed a petition for review in the nature of a complaint in equity (petition for review) in this Court's original jurisdiction, which petition for review seeks to have this Court revoke the Environmental Quality Board's (EQB) redesignation of Valley Creek from a less protected level, "Cold Water Fishes" (CWF), to the highest protected level, "Exceptional Value" (EV). Presently before this Court are preliminary objections to Rouse's complaint filed by the EQB and the Department of Environmental Resources (DER) (collectively, respondents).

Rouse's interest in the designation of Valley Creek emanates from its preliminary subdivision and land development plan application to develop 161 acres for multi-family residen-

tial dwellings in East Whiteland Township (the Township). The East Whiteland Township Zoning Board (zoning board) approved Rouse's application with the condition that Rouse construct a package treatment plant that discharges treated water into Valley Creek. At that time, there were already package treatment plants located on Valley Creek which discharged treated water into the waterway. Rouse had initially proposed to connect to the Township's public sewer system but agreed to construct the treatment plant in conformity with the zoning board's direction. Subsequently, three environmental groups unsuccessfully challenged the zoning board's requirement that Rouse's treatment plant discharge water into Valley Creek.

In 1992, DER began reviewing the status of Valley Creek in anticipation of a September 1992 meeting of the EQB which would review the status of several streams and determine whether public hearings were necessary. DER prepared a document which recommended to the EQB that Valley Creek be redesignated from CWF to "High Quality—Cold Water Fishes" (HQ–CWF). Despite DER's recommendation, the EQB temporarily upgraded Valley Creek to EV at the conclusion of its September 15, 1992 meeting.

On November 7, 1992, at 22 Pa.B. 5436–44 (1992), the EQB published proposed amendments to the regulations designating water quality standards for streams, including Valley Creek. The notice accompanying the proposed regulations provided that DER had originally recommended that Valley Creek be redesignated HQ–CWF and that public comments would be accepted regarding Valley Creek until January 25, 1993. During the public comment period over 1,300 people wrote to DER and to the EQB regarding Valley Creek; they almost unanimously requested that Valley Creek be upgraded to EV. Rouse wrote two letters to the EQB objecting to the redesignation of Valley Creek as EV, citing Valley Creek's past history of receiving a CWF designation and the DER's recommendation that Valley Creek be redesignated HQ–CWF.

The EQB announced that it would take final action on the status of Valley Creek at its August 17, 1993 meeting. DER

prepared an executive summary of streams report for the final regulation package, wherein it recommended a redesignation of HQ–CWF for Valley Creek, except for the 2.1 miles which flow through Valley Forge National Park, for which it recommended a designation of EV. Rouse alleges that after DER prepared that report, several local newspapers publicized DER's plan for the dual designation of Valley Creek. DER, contrary to its executive summary report, subsequently recommended that the entire Valley Creek be designated EV in its final rule-making package prepared for the EQB meeting of August 17, 1993.

At the August 17, 1993 EQB meeting, the EQB purported to upgrade Valley Creek to EV. Rouse filed its petition for review in this Court's original jurisdiction on September 15, 1993, challenging the redesignation of Valley Creek. The EQB's redesignation became final and of legal effect subsequent to the filing of Rouse's petition for review, when the redesignation was published at 23 Pa.B. 5529–38 (1993) on November 20, 1993.

Rouse's petition for review contends that the EQB's September 15, 1992 temporary upgrade of Valley Creek to EV is unconstitutional, improper, unlawful, and an abuse of discretion, because the temporary upgrade was accomplished: (a) without conducting a hearing on the matter; (b) without publishing notice that a temporary upgrade was being considered; (c) by disregarding DER's recommendation that Valley Creek be designated HQ–CWF; (d) by singling out Valley Creek for temporary upgrade without redesignating any other stream in the area; and (e) without any standards or criteria on which to base a change in stream classification. Moreover, Rouse contends in the petition for review that the EQB's August 17, 1993 redesignation is unconstitutional and violates its rights to due process and equal protection because: (a) there are no regulations on which a determination of stream classification can be made by the EQB; (b) there are no published criteria on which the EQB can make a determination to upgrade a stream to EV; (c) there were no criteria on which DER could make a recommendation for upgrade; and

(d) the decision to upgrade Valley Creek to EV was not based upon any legally cognizable and published criteria.

On October 19, 1993, respondents filed preliminary objections to Rouse's complaint. The preliminary objections request that this Court dismiss Rouse's petition for review and assert that this Court does not have jurisdiction over the instant matter. Respondents' preliminary objections contain three arguments: (1) That Rouse does not have standing to challenge the EQB's redesignation of Valley Creek; (2) that Rouse has failed to exhaust its administrative remedies; and (3) that Rouse's action is not ripe for judicial review by this Court. These arguments distill into one issue, which is whether a landowner may petition this Court's original jurisdiction seeking pre-enforcement review of DER's regulatory scheme of upgrading the water quality standard of a waterway.

Our scope of review regarding preliminary objections in the nature of a demurrer is to determine whether on the facts alleged the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore*, 157 Pa.Commonwealth Ct. 243, 629 A.2d 270 (1993). We must accept as true all well-pled allegations and material facts averred in the complaint and all inferences reasonably deducible therefrom, and any doubt should be resolved in favor of overruling the demurrer. *Id.*

Initially, we conclude that Rouse has standing to challenge the redesignation of Valley Creek from CWF to EV. Generally, in order to have standing to contest a governmental action, a party must have an interest in the dispute which is substantial, direct, and immediate and which can be distinguished from the interest shared by other citizens. *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184 (1988). "A substantial interest in the outcome of a dispute is an interest which surpasses the common interest of all citizens in seeking obedience to the law." *Empire Coal Mining & Development, Inc. v. Department of Environmental Resources*, 154 Pa.Commonwealth Ct. 296, 300, 623 A.2d 897, 899, *petition for allowance of appeal denied*, 535 Pa. 625, 629 A.2d 1384 (1993). "A party

has a direct interest in a dispute if he or she was harmed by the challenged action or order." *Id.* The "interest is immediate if there is a causal connection between the action or order complained of and the injury suffered by the party asserting standing." *Id.*

In the present matter, Rouse's interest in the designation of Valley Creek is substantial, direct, and immediate. Rouse's interest is substantial, because its challenge to DER's regulatory scheme for making water quality designation and specifically, its challenge to the water quality designation of Valley Creek go beyond the common interest of all citizens in seeking obedience to the law. At stake are Rouse's plans to develop a 161–acre site on land in close proximity to Valley Creek, which plans are contingent, pursuant to the direction of the zoning board, on Rouse's construction and operation of a sewage treatment plant which utilizes Valley Creek for sewage treatment purposes.

Moreover, Rouse's interest is direct and immediate, because the redesignation of Valley Creek as EV virtually ensures that Rouse will not be permitted to construct the package treatment plant. We disagree with respondents' assertion that until Rouse submits a permit application, it is pure conjecture for Rouse to assume that an EV designation for Valley Creek prohibits the construction of the package treatment plant. Rouse's position is bolstered by the language of pages VI–1 and VI–2 of DER's Special Protection Waters Implementation Handbook, dated November 1992, which provides, in pertinent part:

> Typically, point source discharges of conventionally treated wastewater cause an adverse measurable change (explained below) in the water quality of the receiving stream. The issuance of permits for direct stream discharge of wastewater to Exceptional Value Waters is therefore, rare and in some instances prohibited.[1]

1. See Exhibit C of Rouse's brief in opposition to respondents' preliminary objections.

Rouse's plan to discharge treated water in an EV designated waterway is extremely improbable given the discussion *supra* of wastewater discharge in DER's handbook, coupled with DER's regulation that waters designated as EV shall be maintained and protected *at a minimum at their existing quality.* See 25 Pa.Code § 95.1(c). Accordingly, we reject DER's and the EQB's argument that Rouse does not have standing to challenge the redesignation of Valley Creek.

■■■ Respondents also assert that Rouse's action is premature and, therefore, not ripe for judicial disposition, because DER has not yet sought to enforce the regulation redesignating Valley Creek as EV, and because Rouse has not filed an application for a permit to discharge wastewater into Valley Creek. In the absence of enforcement of the regulation or a refusal to grant Rouse a permit to discharge wastewater into Valley Creek, respondents believe that Rouse has failed to allege any action which is ripe for this Court's review. The basic rationale of the ripeness doctrine "is to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies...." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In determining whether the present matter is ripe for judicial review, this Court will consider both whether the issues are adequately developed for judicial review and what hardship the parties will suffer if review is delayed. *Braksator v. Zoning Hearing Board of Northampton Township,* 163 Pa.Commonwealth Ct. 332, 641 A.2d 44 (1994).

Respondents, relying on this Court's recent decision in *Concerned Citizens of Chestnuthill Township v. Department of Environmental Resources,* 158 Pa.Commonwealth Ct. 248, 632 A.2d 1 (1993), *petition for allowance of appeal denied,* 537 Pa. 635, 642 A.2d 488 (1994), contend that Rouse cannot seek pre-enforcement review of an upgrading of the water quality standards for a waterway. In *Concerned Citizens,* a local interest group, Concerned Citizens of Chestnuthill (the CCC) sought to challenge a redesignation of McMichaels Creek from "High Quality Waters" (HQ) to EV. The CCC filed a petition

in this Court's original jurisdiction asking this Court to reverse the EQB's redesignation, even though DER had not yet sought to enforce the regulation so designating McMichaels Creek. The EQB and DER filed preliminary objections similar to the ones filed in the present matter, claiming that this Court did not have original jurisdiction over the matter, because DER had not sought to enforce the allegedly invalid regulation. Moreover, the EQB and DER asserted that until the regulation was enforced, the matter would not be ripe for judicial disposition, because the CCC had not suffered actual present harm.

In *Concerned Citizens*, we agreed with the EQB and DER and held that we had no jurisdiction to entertain the petitioners' complaint. First, we acknowledged that although the CCC could not get immediate administrative relief from the Environmental Hearing Board (EHB), since the regulation had not been enforced by DER, nonetheless, petitioners could not seek relief in this Court. We cited our Supreme Court's decision in *Neshaminy Water Resources Authority v. Commonwealth*, 511 Pa. 334, 513 A.2d 979 (1986), for its ruling that post-enforcement review of an administrative regulation is adequate to protect a party's interests, unless the regulation itself would cause actual, present harm prior to enforcement. Since the CCC had not alleged that it would suffer actual, present harm, we concluded that the CCC's action was premature and not ripe for decision within the original jurisdiction of this Court.

Since Rouse is also challenging, pre-enforcement, a change in the designation for water quality standards of a body of water, *Concerned Citizens* appears at first glance to be directly on point and dispositive of the present matter. However, after reviewing Rouse's petition for review, and being mindful that we must accept as true all of Rouse's well-pled factual allegations, we conclude that the present matter can be distinguished from *Concerned Citizens* for two reasons.

First, Rouse has alleged that it will suffer actual, present harm before the enforcement of DER's designation of Valley Creek as EV. In its petition for review, Rouse claims that it

is immediately, directly, and actually impacted and that it will suffer a hardship for the following reasons:

a. Rouse would be required to spend endless amounts of time and money to prepare plans and applications and submit them for its proposed treatment plant. They would then be processed by DER when DER has already predetermined that a treatment plant with stream discharge into an EV stream will cause an adverse measurable change in the existing water quality and, therefore, would not be issued a permit.

b. Rouse would be forced to await an administrative determination of its permit application before being able to obtain a judicial review of the validity of the regulation and the viability of the permit application.

c. In order to be able to apply for a sewage disposal plan permit, Rouse would have to spend tremendous sums of money for final land development plans for its proposed development because DER will not process Act 537 amendments or sewage disposal plant permits until final land development plans have been approved.

d. Rouse cannot proceed with its development or sell its development because of the uncertainty of the sewer proposal.

These allegations, when accepted as true, demonstrate the existence of actual, present harm.

Second, the instant matter can be distinguished from *Concerned Citizens*, because Rouse is placed in a unique position by the zoning board's refusal to allow Rouse to connect to presently operating sewage disposal units and by the zoning board's conditioning of its approval of Rouse's land use plans on Rouse's agreement to construct a sewage treatment plant. In *Concerned Citizens*, the CCC's general claim that the redesignation of McMichaels Creek would have deleterious economic, social, and political effects is far more remote and anticipatory than Rouse's claims in the present matter. The CCC did not have any pending subdivision or land development plan, the approval of which was tied to the existence of

an EV stream. In the instant matter, the zoning board's requirement that Rouse construct a treatment plant that discharges into Valley Creek in order realize his land use proposal, forces Rouse to be more immediately concerned with the water quality requirements for Valley Creek.

Accepting Rouse's factual claims as true, Rouse has demonstrated that it will suffer actual, present harm before DER enforces the new regulation redesignating Valley Creek as EV. Therefore, pursuant to *Neshaminy Water Resources Authority* and *Concerned Citizens,* we conclude that the hardship Rouse has demonstrated in its challenge to the redesignation of Valley Creek to EV, suffices to establish the justiciability of the challenge in advance of the enforcement.

■ Respondents also contend that this Court does not have original jurisdiction over the present matter, because Rouse has failed to exhaust its administrative remedies and follow the statutorily prescribed review process. In respondents' view, pursuant to Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a), the EHB has the power to review the validity of a DER regulation, when the DER performs a specific action involving the application and enforcement of an allegedly invalid or illegal regulation. While we agree with respondents that recourse to the EHB would be available, we conclude that even in the pre-enforcement context, this remedy does not adequately protect Rouse's interests. Moreover, we conclude that the exhaustion of administrative remedies is unnecessary in the present matter. Our conclusion is based on two observations.

First, Rouse's petition for review goes further than merely challenging DER's redesignation of Valley Creek. Rouse's petition for review raises constitutional due process and equal protection challenges to DER's regulatory scheme of designating the water quality standards for waterways. We have consistently held that the exhaustion of administrative remedies is not required where a statutory scheme's constitutionality or validity is being challenged. *Giffin v. Chronister,* 151 Pa.Commonwealth Ct. 286, 616 A.2d 1070 (1992); *Stone and*

*Edwards Insurance Agency, Inc. v. Department of Insurance,*
151 Pa.Commonwealth Ct. 266, 616 A.2d 1060 (1992).

Second, as we have discussed previously, Rouse has suffered actual, present harm from the promulgation of DER's regulation. In *Pennsylvania Association of Rehabilitation Facilities v. Foster,* 147 Pa.Commonwealth Ct. 487, 608 A.2d 613 (1992), we held that this Court has jurisdiction to conduct pre-enforcement review of a regulation if the administrative remedy is either unavailable or inadequate and the effect of the regulation on the party seeking review is direct and immediate.[2] Since we have determined that the exhaustion of remedies doctrine is inapplicable and that Rouse has suffered actual, present harm, we conclude that this Court has jurisdiction to conduct a pre-enforcement review of both the constitutionality of the DER's regulatory scheme of designating water quality standards on Commonwealth waterways, and more specifically, DER's redesignation of Valley Creek from CWF to EV.

Accordingly, we overrule all of respondents' preliminary objections.

PELLEGRINI, J., did not participate in the decision in this case.

## ORDER

AND NOW, this 26th day of May, 1994, respondents' preliminary objections in the above-captioned matter are over-

---

**2.** Our decision in *Pennsylvania Association of Rehabilitation Facilities* was rooted in our Supreme Court's decision in *Arsenal Coal Company v. Department of Environmental Resources,* 505 Pa. 198, 477 A.2d 1333 (1984). In *Arsenal Coal,* a large group of coal mine operators and producers sought to enjoin DER from implementing certain regulations promulgated by the EQB which governed the surface mining of anthracite coal. Our Supreme Court held that because the regulation resulted in uncertainty in the day-to-day operations of the anthracite coal industry, this direct and immediate effect was sufficient to establish the justiciability of challenging the regulations in advance of enforcement. *Arsenal Coal* also stated that requiring the coal industry to comply and await judicial determination of the validity of the regulation would result in a costly and inefficient process of litigation.

338

ruled. Respondents are directed to file an answer within thirty (30) days of the date of this order.