**HOME BUILDERS ASSOCIATION OF CHESTER AND DELAWARE COUNTIES, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL PROTECTION, David E. Hess, Secretary of Environmental Protection, James Newbold, P.E., Regional Manager, Water Management and Martha E. Blasberg, Supervisory Counsel, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 4, 2003.

Decided July 9, 2003.

Joel R. Burcat, Harrisburg, for petitioner.

Martha E. Blasberg, Conshohocken, for respondents.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Before this Court are preliminary objections filed by the Commonwealth of Pennsylvania, Department of Environmental Protection; David E. Hess, Secretary of Environmental Protection; James Newbold, P.E., Regional Manager, Water Management; and Martha E. Blasberg, Supervisory Counsel (collectively, DEP) in response to a petition for review filed by the Home Builders Association of Chester and Delaware Counties (Association).

The Association is a Pennsylvania not-for-profit trade association that represents the interests of home builders and contractors who are located primarily in Chester and Delaware Counties. It is made up of over 100 production and custom home builders, remodelors and land developers, among others. On December 20, 2002, the Association filed with this Court in our original jurisdiction a petition for review against DEP in the nature of a six-count complaint in equity seeking a permanent injunction and a declaratory judgment against DEP. In its complaint, it alleged that it would be harmed by the application of the Settlement Agreement dated September 6, 2001, entered into by DEP and the Valley Creek Coalition (Coalition) in *Valley Creek Coalition v. Commonwealth of Pennsylvania, Department of Environmental Protection and Vanguard Group, Permittee,* Environmental Hearing Board Docket No. 2000–068–MG and the Comprehensive Stormwater Management Policy (Stormwater Policy) issued by DEP on September 28, 2000.

The Association alleged that the Settlement Agreement, which was entered into between DEP and a group of environmental organizations called the Coalition, purported to settle administrative litigation between DEP and the Coalition regarding one particular site, the Valley Creek Watershed, but in reality, it was a regulation

that was not properly promulgated and was binding on anyone wishing to develop property in the Valley Creek Watershed. Specifically, the Association argued that the Settlement Agreement imposed new, mandatory regulatory requirements on all applications for a National Pollutant Discharge Elimination System (NPDES) Permit for discharges of stormwater associated with construction activities to Valley Creek received subsequent to the date of execution of the Settlement Agreement and specifically affected the Association but they were not parties to the Settlement Agreement. As for the Stormwater Policy, the Association argues that DEP is now requiring use of infiltration Best Management Practices and limiting post-construction flow; however, there is no technical guidance manual that defines those practices. Also, the Stormwater Policy requires owners to prepare an application and obtain an NPDES Permit for construction activities involving one to five acres as well as for some of the watersheds. The Association avers that the Stormwater Policy goes beyond any mandates established by federal or state law and creates new requirements that have not existed previously. The Association alleges that its members are currently being harmed as a result of the Settlement Agreement and Stormwater Policy. Based upon these allegations, the Association asserted the following six counts:

- **Count I: Violation of Administrative Code.** Only the Environmental Quality Board (EQB) has the power to promulgate regulations; DEP lacks any statutory power to promulgate rules and regulations and may only enforce the rules and regulations adopted by the EQB.
- **Count II: Violation of Commonwealth Documents Law.** The Settlement Agreement and Stormwater Policy are unlawful because they have been promulgated without proper adherence to the Commonwealth Documents Law.
- **Count III: Violation of Administrative Agency Law.** To the extent that the Settlement Agreement and Stormwater Policy are adjudications of DEP, they are unlawful because there was no hearing and an opportunity to be heard.
- **Count IV: Violation of Regulatory Review Act.** The Settlement Agreement and Stormwater Policy are unlawful because they were promulgated without review by committees of the General Assembly's Senate and House of Representatives, public meetings, review by the Independent Regulatory Review Commission (IRRC) and approval or denial by the IRRC.
- **Count V: Violation of Commonwealth Attorneys Act.** The Settlement Agreement and Stormwater Policy are regulations of DEP which are unlawful because they were promulgated without review by either the Attorney General or General Counsel.
- **Count VI: Constitutional Violations.** By promulgating these regulations, DEP has taken the property of the members of the Association for public use without just compensation and has deprived the members of the Association of their property without due process of law. Similarly, the Commonwealth has deprived the members of the Association of their due process and equal protection rights; has enforced a law that abridges the privileges and immunities of the members of the Association; and has enacted laws impairing the obligation of contracts.

In response, on January 21, 2003, DEP filed preliminary objections alleging that

neither the Settlement Agreement nor the Stormwater Policy constituted a regulation, the complaint did not allege facts which stated a claim against David Hess, James Newbold and Martha Blasberg, and those individuals are immune from suit under the doctrine of sovereign immunity. The Association subsequently filed an amended petition for review adding an additional count—violation of the Clean Streams Law.[1] DEP then filed preliminary objections to the amended petition which are presently before this Court in which they allege the following:

- Neither the Settlement Agreement nor the Policy constitutes a regulation;
- The Association fails to allege any action that is ripe for review by this Court, and it does not allege that action has been taken against the Association by DEP or the named individuals based on either the Settlement Agreement or the Policy; and
- The Association has available administrative remedies which have not been exhausted, and the amended petition does not invoke the pre-enforcement review exception to the doctrine of exhaustion of administrative remedies.[2]

We will address these issues *in seriatim.* If the Settlement Agreement and Stormwater Policy are not regulations, we need not address the other preliminary objections.

## I. POLICY OR REGULATION

The Association contends that the Settlement Agreement and Policy Statement are actually regulations that were improperly promulgated by DEP. In order to determine whether they are regulations, we need to know what constitutes a regulation and what constitutes a policy statement. In *Department of Environmental Resources v. Rushton Mining Company,* 139 Pa.Cmwlth. 648, 591 A.2d 1168, *petition for allowance of appeal denied,* 529 Pa. 626, 600 A.2d 541 (1991),[3] we recognized the difficulty that both state and federal courts had in determining whether an agency pronouncement was a policy or a regulation stating:

> Addressing this problem, the Second Circuit in *Noel v. Chapman,* 508 F.2d 1023, 1030 (2d Cir.1975), *cert. denied,* 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975), stated, "the distinction between a statement of policy and a regulation is enshrouded in considerable smog." More colorfully, the Eleventh Circuit in *Jean v. Nelson,* 711 F.2d 1455, 1488 (11th Cir.1983), stated, "analyzing a rule within the general policy exception is akin to wandering lost in the Serbonian Bog." Despairingly, Kenneth Davis, in

---

1. Act of June 22, 1937, P.L.1987, *as amended,* 35 P.S. §§ 691.1–691.1001. In this added count, the Association alleges that DEP has violated the Clean Streams Law because, among other reasons mentioned in the other counts, it has failed to submit the Settlement Agreement and Stormwater Policy to the Senate Environmental Resources and House Mines and Energy Management Committees of the General Assembly for their review.

2. DEP also alleged in its preliminary objections that the Association failed to state a claim against three DEP officials, failed to establish a claim against DEP under Section 601 of the Clean Streams Law, 35 P.S.

§ 691.601, and failed to state a claim for attorney's fees. Because of the way we have resolved this case, we need not address those allegations.

3. That case involved the issue of whether standard conditions in permits were invalid because they were regulations and were not properly promulgated in accordance with Sections 201 and 202 of the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1201 and 1202, or instead were statements of policy that did not require promulgation.

his treatise on administrative law, states, "The law on this subject is obviously unsatisfactory, but no one steps forward to remedy its deficiencies. Everyone fails, Congress, courts, agencies, treatise writers." K. Davis, *Administrative Law of The Eighties, 1989 Supplement to Administrative Law Treatise*, § 7.5, p. 235.

*Id.* at 1172. Pennsylvania attempted to step forward by defining the terms in Sections 102(13) and (12) of the Commonwealth Documents Law, 45 P.S. § 1102(13) and (12), which define statement of policy and regulation, respectively, as follows:

> "Statement of policy" means any document, except an adjudication or a regulation, promulgated by an agency which sets forth substantive or procedural personal or property rights, privileges, immunities, duties, liabilities or obligations of the public or any part thereof, and includes, without limiting the generality of the foregoing, any document interpreting or implementing any act of Assembly enforced or administered by such agency.

> "Regulation" means any rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency.

We noted in *Rushton* that the definition of "statement of policy" was defined by what it was and was so expansive that any pronouncement could fall within this definition; however, the definition of "regulation" was not defined by what it was but rather by how it was issued—through a process that included public notice of a proposed rule, making a request for written comments by any interested party, giving due consideration to such comments and holding hearings as appropriate which was not required for a statement of policy.

We continued to explain that our Supreme Court took an alternative approach because, apparently, it did not believe that our General Assembly intended for an agency to have sole discretion in determining when a statement of policy should become a regulation. In *Pennsylvania Human Relations Commission v. Norristown Area School*, 473 Pa. 334, 374 A.2d 671 (1977), without discussing the differences in language between the Commonwealth Documents Law and federal Administrative Procedure Act (APA), which was apparently not raised,[4] adopted the federal rational known as the "binding norm test" to determine when a statement of policy was actually a regulation, explaining as follows:

> [A]n agency may establish binding policy through rulemaking procedures by which it promulgates substantive rules or through adjudications which constitute binding precedents. A general statement of policy is the outcome of neither a rulemaking nor an adjudication; it is neither a rule nor a precedent; but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications. A general statement of policy, like a press release, presages an upcoming rulemaking or announces the course which the agency intends to follow in future adjudications. The critical distinction between a substantive rule and a general statement of policy is the different practical effect that these two types of pronouncements

---

**4.** Section 553(b) of the APA, 5 U.S.C. § 553(b), requires notice and comment for regulations but not for statements of policy; however, Section 551 of the APA, 5 U.S.C. § 551, fails to provide a definition of a "statement of policy."

have in subsequent administrative proceedings ... A properly adopted substantive rule establishes a standard of conduct which has the force of law ... The underlying policy embodied in the rule is not generally subject to challenge before the agency.

A general statement of policy, on the other hand, does not establish a 'binding norm' ... A policy statement announces the agency's tentative intentions for the future. When the agency applies the policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued.

"Binding norm" means that the agency is bound by the statement until the agency repeals it, and if the statement is binding on the agency, it is a regulation. Additionally, in determining whether an agency action is a regulation or a statement of policy, one must look to the extent to which the challenged pronouncement leaves the agency free to exercise discretion to follow or not follow the announced policy in an individual case.

*Rushton*, 591 A.2d at 1173. In determining that the Department of Environmental Regulation's (DER) policy statements were actually regulations requiring promulgation, we concluded that the DER set forth a comprehensive system regarding mining operations which provided conditions precedent in order to mine coal in Pennsylvania which had a significant impact on the coal mine operators stating:

Applying the binding norm test to these conditions, the DER is attempting to implement a uniform state-wide policy for certain aspects of mine operations. Inherent in a statewide policy is that the regulations will necessarily be binding on the agency, and none of the agency's personnel will have any discretion to vary those terms and conditions.

*Id.* at 1174. The ultimate issue that we must then decide in this case is whether the Stormwater Policy or the Settlement Agreement are binding norms, and, if so, whether they are akin to a regulation, and whether there is an administrative remedy available so that matter does not lie within our original jurisdiction.

## A. STORMWATER POLICY

On October 27, 2001, DEP published a proposed comprehensive Stormwater Policy "to more fully integrate post construction stormwater planning requirements, emphasizing the use of ground water infiltration and volume and rate control best management practices into the existing and proposed NPDES permitting programs and the Stormwater Management Act Planning Program." (Executive Summary at i.) More than 600 comments were received from 234 individuals and organizations during the public comment period on the proposed Policy and, as a result, DEP proposed, revised and finalized several other related documents.[5] DEP then issued its final Stormwater Policy which is now at issue.

The final Stormwater Policy "describes the Department's update of its stormwater management programs, using existing authority, to improve water quality, sustain

---

5. Those documents include:
 • Renewal of NPDES Stormwater Construction General Permit (5 acres or greater);
 • Proposed NPDES Stormwater Construction General Permit (1–5 acres);
 • Proposed MS4 General Permit;
 • Renewal of NPDES Industrial General Permit;
 • Revised Act 167 Model Ordinance;
 • EPA has approved funding to support the development of a Post Construction Stormwater Technical BMP Manual.

water quantity including ground water recharge and stream base flow, and to implement federal stormwater management obligations." (Stormwater Policy at 1.) The goals of the Stormwater Policy "are to improve and sustain ground and surface water quality and quantity through the use of planning practices and best management practices that minimize the generation of stormwater runoff, provide ground water recharge and minimize the adverse effects of stormwater discharges on ground and surface water resources." *Id.* The Stormwater Policy integrates the following permit requirements into DEP's existing stormwater management programs:

- NPDES Stormwater Discharge Associated with Construction Activity Permit Program. Persons conducting earth disturbance activities are required to secure the appropriate NPDES permit for:

 ○ Phase I Earth Disturbances 5 Acres or Greater;

 ○ Phase II Earth Disturbance between 1 and 5 acres;

 ○ Integration of Post Construction Stormwater Management Plans into NPDES Stormwater Discharge Associated with Construction Activity Permits.

- NPDES Municipal Separate Storm Sewer System (MS4) Discharge Permit Program:

 ○ Integration of Post Construction Stormwater Management Plans into Act 167 Stormwater Management Plans and MS4 permits.

- NPDES Industrial Stormwater Permit Program.

 The Association contends that the Stormwater Policy is an invalid regulation because it contains significant new mandates for stormwater discharges associated with post-construction activities. It points out that under the new Stormwater Policy, owners of land of one to five acres are now required to prepare an application and obtain an NPDES permit for construction activities which they were not previously required to do. It also points out that there are other new requirements as well.[6] The Stormwater Policy now requires, among other things, that:

- "water quality treatment BMPs *must be employed* where necessary to ensure protection of existing uses and the level of water quality necessary to protect those existing uses;"

- "the volume and rate of stormwater discharge *must be managed* to prevent scour and streambank erosion;" and

- "persons involved in the development of post-construction stormwater management plans *should prepare* a compar-

---

**6.** Without making a distinction between the Stormwater Policy and the Settlement Agreement, DEP contends that matter is not ripe for review and administrative remedies must be pursued. In *Rouse & Associates v. Pennsylvania Environmental Quality Board,* 164 Pa.Cmwlth. 326, 642 A.2d 642 (1994), we addressed a similar argument involving a new regulation and the same Valley Creek watershed and found that that the matter was ripe for judicial review because the tremendous costs associated with having to obtain development plans and applications for a proposed water treatment plant in having to comply with the challenged policy before the validity of the regulation was reviewed made the issue ripe for judicial review. For the same reason, we find that whether the Stormwater Policy was promulgated in accordance with the Commonwealth Documents Law is an issue ripe for review because it has been pled that the Stormwater Policy has the potential to cause the Association to suffer financial losses and substantial increased costs, the inability to obtain permits or to obtain permits in a timely manner, contractual defalcations and other serious adverse harm.

ative pre and post-construction storm-water management analysis."

(Stormwater Policy at 2.)

■ However, contrary to the Association's argument, our review of the Stormwater Policy is that it merely describes a recommended approach for achieving compliance with the existing requirements. As DEP contends, the Policy recommends "a uniform approach to stormwater management that the Department believes will assure consistency in its stormwater programs and assure compliance with the existing use protection required by 25 Pa. Code § 93.4c(a). The Policy's stated goal is to implement existing requirements, not to create new requirements." (DEP's brief at 21.) The Stormwater Policy itself specifies that it is merely updating DEP's stormwater management programs using existing authority and contains the express disclaimer that the policies and procedures outlined in the document are intended to supplement existing requirements. It further adds: "[t]he policies and procedures herein are not adjudications or regulations. There is no intent on the part of DEP to give the rules in these policies that weight or deference." (Stormwater Policy Disclaimer.) Although the Policy now requires a permit where one was not required previously, we disagree that such a requirement, in and of itself, makes the entire Stormwater Policy a regulation.

Also, utilizing the binding norm test, DEP is able to exercise discretion to follow or not follow the announced Stormwater Policy in an individual case. Consequently, we disagree with the Association that the Stormwater Policy is a regulation.

## B. SETTLEMENT AGREEMENT

The Settlement Agreement is an agreement between DEP and the Coalition in response to the Coalition's appeal from DEP's issuance of an NPDES permit to the Vanguard Group for the expansion of its business campus in Tredyffrin Township, Chester County. The Coalition alleged that the stormwater discharges to Little Valley Creek, a tributary of Valley Creek, was classified as an Exceptional Value water pursuant to 25 Pa.Code § 93.9(f), and had a unique environmental and historical significance requiring the highest degree of protection to maintain its Exceptional Value status. The parties agreed that due to increased development in the Watershed, there was increased stormwater runoff and decreased infiltration presenting a serious threat to the chemical, physical and biological integrity of Valley Creek. The Settlement Agreement imposes specific conditions that DEP will impose as part of its review of all applications filed by anyone for NPDES permits for stormwater associated with construction activities in Valley Creek.[7]

---

7. Those conditions in the Settlement Agreement are as follows:

2. In order to protect and maintain the Exceptional Value surface waters of Valley Creek, the following conditions will apply to the Department's review of NPDES Permits for Stormwater Associated with Construction Activities.

(a) Applicants must demonstrate that the post-construction stormwater infiltration on the project site will be no less than the stormwater that infiltrated under pre-development conditions. Where a project applicant demonstrates that site-specific

conditions preclude achievement of this requirement, the project proponent will be required to provide appropriate off-site infiltration within the watershed, preferably upstream from the project.

(b) In order to protect and maintain the quality of Valley Creek from the effects of scour and erosion, applicants must demonstrate that the volume and rate of stormwater runoff will not cause or cumulatively contribute to scour or erosion. Applicants may make this demonstration either through the implementation of on-site controls or through a combination of on-site

The Association argues because the Settlement Agreement applies to all applications for an NPDES permit for discharges of stormwater associated with construction activities to Valley Creek, it creates a binding norm that makes it a regulation. Because it was not properly promulgated as required by the Commonwealth Documents Act, it argues then that DEP should be enjoined from enforcing those regulations. DEP counters by contending that the conditions in the Settlement Agreement merely implement existing regulations regarding the degradation of the water quality.

If state and federal courts had difficulty in determining whether an agency pronouncement was a policy or a regulation, the impact of settlement agreements that bind agencies to act in a certain way on the rights of third parties or whether a settlement can rise to the level of a regulation is even more problematic involving due process, unlawful delegation and separation of powers issues. *See* Larry Kramer, *Consent Decrees and the Rights of Third Parties*, 87 Mich. L.Rev. 321 (1988); Peter M. Shane, *Consent Decrees: Practical Problems and Legal Dilemmas*, U. Chi. Leg. F. 241 (1987). To address some

of those concerns, Congress has enacted the Negotiated Rulemaking Act, 5 U.S.C. § 563 (1994) to allow agencies to negotiate the substance of the settlement agreement with stakeholders and then promulgate them formally in accordance with the APA with formal notice and comment. Even that process, where, unlike here, the negotiated regulations is then issued in accordance with the APA, is subject to criticism in that regulations are presumed to be promulgated by agencies acting in the public interest while negotiated rulemaking creates a system in which parties make an agreement among and for themselves, resulting in the transformation of a process that was created to promulgate public law serving the public interest into a private law relation and is "nothing more than the expression of a private interests mediated through some governmental body." William Funk, *Bargaining Toward the New Millennium: Regulatory Negotiation and the Subversion of the Public Interest*, 46 Duke L.J. 1351, 1375 (1997).

We addressed the due process problem that occurs when, by a consent decree, an agency enters into an agreement that binds them to a policy that affects third

and off-site controls. Applicants who design stormwater controls for sites that will control the volume and rate of stormwater runoff such that the post-construction volume and rate of stormwater runoff will not exceed the volume and rate of stormwater runoff under pre-development conditions for all storms up to and including the 2–year frequency, 24 hour duration rainfall will be considered to have met this requirement.

(c) Applicants will be required to demonstrate that post construction discharges from the project site will not cause a measurable change in the quality of Valley Creek and its tributaries through the addition of pollutants or a change in temperature. Applicants will be encouraged to use subsurface storage for infiltration BMPs to prevent a measurable change in temperature

from post-construction stormwater discharges.

3. This agreement shall apply to all applications for an NPDES Permit for discharges of Stormwater Associated with Construction Activities to Valley Creek received subsequent to the date of execution of this agreement.

4. The provisions of this agreement implement and are consistent with the provisions of the Department's regulations which protect the existing and designated uses of the waters of the Commonwealth and which govern the review and issuance of NPDES permits for the discharge of stormwater from construction activities. Nothing in this agreement is intended to conflict with any more stringent federal, state, county or local laws that do or may regulate the discharge or control of stormwater.

parties in *City of Chester v. Public Utility Commission*, 773 A.2d 1280 (Pa.Cmwlth. 2001). In that case, the Pennsylvania Public Utility Commission entered into a consent decree in federal court that would not exercise its adjudicatory discretion to allocate costs against certain parties in crossing cases. In refusing to apply that to strangers, in those cases, we stated that such an agreement was not binding on third parties because "[n]one of the parties to the proceeding underlying this appeal were a party to the proceeding involving the consent decree, and by deferring to the consent decree, ... violating the due process rights of those who were not a party to that settlement." *Id.* at 1286.

■ Having said all that, it is clear that an agency cannot create new regulation through negotiations that are binding on the agencies without formally adopting the regulation through the procedures set forth in the Commonwealth Documents Law; nor can an agency enter into settlement agreements that are *de facto* regulations. Assuming then that the Settlement Agreement here creates obligations that are equivalent to a regulation, the question then becomes whether DEP can be enjoined from enforcing a settlement agreement, as the Association contends, because it was not promulgated as a regulation and whether it is ripe for review.

■ When challenges are made that the agency created a binding norm and the pronouncement by an agency is a regulation, normally, what is involved is a unilateral action taken by the agency, not, as here, an order, adjudication or a settlement of litigation that involves a third party. Unlike an agency pronouncement, the settlement of litigation is an agreement between private parties binding only upon those parties. Because it is only binding on those parties, while a settlement or a court order may create what would other-

wise be considered a binding norm, that does not somehow morph the settlement into an invalidly promulgated regulation and cannot be challenged on the basis that it was not adopted in accordance with the Commonwealth Documents Law. Instead, the challenge would be that the imposition of the provision would violate the third party's due process rights. Because due process rights are only implicated when the agency attempts to impose the conditions contained in the settlement agreement, due process rights only become ripe once the agency attempts to apply the provisions of the settlement agreement to third parties. Of course, a defense to such a challenge is that the settlement agreement is merely a statement of existing law and no "binding norm" was created by the settlement agreement.

Because the Settlement Agreement cannot be challenged because it has not been promulgated in accordance with the Commonwealth Documents Law, as well as because there is no allegation that DEP has attempted to apply the conditions in the Settlement Agreement to the Association or any of its members, and, until it does so, no due process violation has occurred, this issue is not ripe for review.

Accordingly, because the Stormwater Policy is not a regulation and the Settlement Agreement is not subject to the Commonwealth Documents Law, the preliminary objections filed by DEP are granted and the Association's petition for review is dismissed.

### ORDER

AND NOW, this *9th* day of *July*, 2003, the preliminary objections filed by the Commonwealth of Pennsylvania, Department of Environmental Protection, David E. Hess, Secretary of Environmental Protection, James Newbold, P.E., Regional Manager, Water Management and Martha

E. Blasberg, Supervisory Counsel, are granted and Petitioner's petition for review is dismissed.